522 So.2d 835 (1988)
Robert Dale HENDERSON, Petitioner,
v.
Richard DUGGER, Respondent.
Robert Dale HENDERSON, Appellant,
v.
State of Florida, Appellee.
Nos. 71981, 72208.
Supreme Court of Florida.
April 11, 1988.
*836 Larry Helm Spalding, Capital Collateral Representative, and Billy H. Nolas and Martin J. McClain, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell and Sean Daly, Asst. Attys. Gen., Daytona Beach, for respondent/appellee.
PER CURIAM.
We have before us a petition for writ of habeas corpus and an appeal from the denial of relief pursuant to Florida Rule of Criminal Procedure 3.850. Robert Dale Henderson, who has filed the petition and appeal, is under sentence of death and under death warrant. We have jurisdiction. Article V, section 3(b)(1)(9), Florida Constitution. Henderson also asks this Court to grant a stay of execution pending resolution of these proceedings. We deny the stay, as well as all other relief sought, and affirm the trial court's denial of Henderson's rule 3.850 motion.
The facts of this case are set forth adequately in this Court's opinion on initial appeal from the conviction for first degree murder and sentence of death. Henderson v. State, 463 So.2d 196 (Fla. 1985). We see no reason to reiterate those facts here, except to note that Henderson was convicted of three counts of first degree murder for the extremely cold-blooded killing of three hitchhikers. Only two of the issues raised in the petition for writ of habeas corpus and the rule 3.850 motion merit discussion.[*] The first issue is whether the recent United States Supreme Court decision of Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) must be retroactively applied to the facts of this case. The second issue is whether there is competent and substantial evidence on the *837 record to support the trial court's conclusions at the rule 3.850 hearing that trial counsel was reasonably effective and that Henderson was competent to stand trial.
In Jackson, the United States Supreme Court held that where the right to counsel has been asserted and attached, there can be no police initiated interrogation, and any waiver of the right to counsel is invalid. The ruling in Jackson represents an extension of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980) to the sixth amendment protections context. Edwards applied this rule to violations of fifth amendment rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It was intended as a prophylactic measure to protect accused persons from abuse of their fifth amendment rights by police interrogators. In Jackson, the Court merely extended this protection to the sixth amendment right to counsel.
With this background in mind, we must determine whether Jackson should be applied retroactively. The test in Florida for determining whether a case should be applied retroactively is found in Witt v. State, 387 So.2d 922 (Fla. 1980). In that case, this Court held that only cases that produce major constitutional changes in the law may be retroactively applied on collateral attack. The essential considerations in making this determination are: "(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule." Id. at 926 (citations omitted). We find that the rule set forth in Jackson does not represent the type of major constitutional change in the law contemplated by Witt as proper for retroactive application.
Accordingly, the issue of whether the statements made by Henderson were improperly admitted has been decided by this Court pursuant to Edwards and cannot be relitigated. Our determination that Jackson is not retroactive means that we need not reach the factual issue of who initiated the interrogation. Our original holding that the statements were properly admitted therefore remains undisturbed.
Henderson also alleges in his rule 3.850 motion that he was not legally competent to stand trial and that his trial counsel was ineffective for failing to raise the issue of his competency. The trial court found that Henderson was competent to stand trial and that counsel presented a reasonably effective, prudent and common-sense defense in a competent and ethical manner in view of the totality of the circumstances of the case. These findings are supported by competent and substantial evidence in the record and are therefore affirmed.
As to Henderson's competency, the experts who examined Henderson at the time of his trial unanimously agreed that Henderson was legally competent to stand trial under the proper legal definitions. One such expert further classified Henderson as a textbook "antisocial" or sociopath. That is, Henderson knew right from wrong and was capable of conforming his conduct to societal standards, but simply did not wish to conform his conduct and did not care that his actions were wrong. Moreover, Henderson's attorney and the public defender investigator testified that Henderson capably assisted them in the preparation of his defense throughout the proceedings and that he fully understood the charges against him. The subsequent diagnosis made by a defense-hired expert five years after his conviction, that Henderson may not have been competent to stand trial does not affect the evidence supporting his competency. The trial court had ample evidence on which it could base its findings that Henderson was competent, regardless of what other contradictory evidence exists. Evidently the trial court, well within its province, gave little weight to the subsequent expert's testimony that Henderson was incompetent. Because the trial court's findings were based on competent and substantial evidence, we will not disturb them.
Similarly, the finding that Henderson's counsel was reasonably effective is supported by the record. Trial counsel testified at the hearing below that he *838 did everything he could under the circumstances of a difficult case. Indeed, the record shows that counsel inquired into the possibility of asserting an insanity defense despite the fact that there were no indications that such a defense was supported by the facts. Counsel was prohibited from talking with Henderson's relatives by Henderson himself, not by any failure to investigate on counsel's part. In addition Henderson's allegation that counsel was ineffective for failing to raise the intoxication defense is without merit as the record is devoid of facts indicating that Henderson was drunk at the time the offenses were committed. We affirm the trial court's findings as to effective assistance of counsel as such findings are based on competent and substantial evidence.
Accordingly, the decision of the trial court below denying relief pursuant to rule 3.850 is affirmed. Furthermore, we deny the writ of habeas corpus and the stay of execution. No petition for rehearing will be entertained.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
SHAW, J., concurs specially with an opinion.
BARKETT, J., dissents with an opinion.
SHAW, Justice, specially concurring.
I agree except to note that my reading of Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), is that it permits the state to reinitiate questioning after an accused requests appointment of sixth amendment counsel provided the state furnishes such counsel and affords the accused an opportunity to consult that counsel. The paraphrased final holding in the majority opinion taken from Jackson is accurate, but the holding, taken out of context, unduly restricts the right of the state to initiate questioning after counsel is appointed and consultation takes place. I read Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980), the same way. This qualifier is important here because there is no question that the state furnished such counsel prior to the questioning of petitioner.
BARKETT, Justice, dissenting.
I would grant the stay because there has not been adequate time for me to read the 1,000 page transcript of the evidentiary hearing held last week in the time allotted between oral argument this morning and the decision of this Court this afternoon. This is especially so since in that period of time it was necessary to simultaneously prepare and rule upon the habeas corpus petition in the case of Johnson v. Dugger, 523 So.2d 161 (Fla. 1988).
NOTES
[*] The remaining issues are decided on the basis that they should have been raised on direct appeal from the conviction and sentence. The failure to do so precludes this Court from deciding them here. Mills v. State, 507 So.2d 602 (Fla. 1987); McCrae v. State, 437 So.2d 1388 (Fla. 1983). This claims are:

(1) that Henderson was involuntarily precluded from being present during critical stages of the proceedings;
(2) that the trial court denied Henderson's renewed motions for change of venue;
(3) that Henderson was forcefully removed from the courtroom in the presence of the jury;
(4) that potential jurors were excused for hardship;
(5) that collateral crime and bad act evidence was improperly admitted at trial;
(6) that Henderson's sentence of death is based on unconstitutionally obtained prior convictions;
(7) that Henderson's sentence was based on the improper aggravating circumstance of lack of remorse.
(8) that the trial court erred in failing to instruct the jury that one of their options was to sentence Henderson to three consecutive life sentences;
(9) that the sentencing court improperly failed to provide Henderson with a pre-sentence investigation report;
(10) that the trial court erred in instructing the jury that they could not consider mercy;
(11) that the jury was erroneously instructed that a verdict of life must be reached by a majority of jurors;
(12) that the penalty phase instructions improperly diluted the jury's sense of responsibility, in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985);
(13) that the trial court unconstitutionally shifted the burden of proving that mitigation outweighs aggravation.
(14) that the sentencing court unconstitutionally "doubled" aggravating factors, using the same facts to conclude that more than one aggravating factors are established;
(15) that this Court has interpreted the aggravating circumstances of heinous, atrocious or cruel and cold, calculated, and premeditated in an unconstitutionally overbroad manner.