No. 87–5323.  STEFFEN *v.* OHIO.  Sup. Ct. Ohio.  Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins and JUSTICE BLACKMUN joins as to Part II, dissenting.

## I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would grant the petition for a writ of certiorari and vacate the death sentence in this case. But even if I did not hold this view, I would grant this petition in order to address the important unresolved issue whether an instruction that reduces a jury's sense of responsibility over a death sentence is nonetheless *per se* constitutional if it is accurate and non-misleading, even when the instruction serves no legitimate state penological interest.

## II

In this case, petitioner was sentenced to death in accordance with the jury's recommendation.  The trial court had instructed the jury:

> "You must understand, however, the jury recommendation to the Court that the death penalty be imposed is just that, a recommendation, and is not binding upon the Court.  The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this Court after the

Court follows certain additional procedures required by the laws of this State. Therefore, even if you recommend the death penalty, the law requires the Court to decide whether or not the defendant, David Joseph Steffen, will actually be sentenced to death or to life imprisonment." Pet. for Cert. 6.

The Ohio Supreme Court characterized this as an "instruction to the jury that their recommendation of death would not be binding on the court, and that the final responsibility for the imposition of the death penalty rests with the court." 31 Ohio St. 3d 111, 113, 509 N. E. 2d 383, 387 (1987). The Ohio Supreme Court then rejected petitioner's argument that "such an instruction impermissibly reduces the jury's sense of responsibility and increases the likelihood of a recommendation of death," *ibid.*, relying upon *State* v. *Buell*, 22 Ohio St. 3d 124, 489 N. E. 2d 795 (1986), a prior Ohio Supreme Court case that had rejected the same challenge to a substantially similar instruction. Although *Buell* went out of its way to "emphatically emphasize [that] the better procedure would be to have no comment by the prosecutor or by the trial judge on the question of who bears the ultimate responsibility," the court concluded that the instruction was neither an inaccurate nor a misleading statement of Ohio law and held that the instruction was thus constitutional. *Id.*, at 144, 489 N. E. 2d, at 813.

I have no cause to second-guess the conclusion that this instruction accurately reflects the state of Ohio law, as authoritatively construed by the Ohio Supreme Court itself. I note, however, that although an Ohio jury's recommendation of death is not binding on a trial court, a trial court cannot impose the death sentence when the jury recommends life imprisonment. Ohio Rev. Code Ann. § 2929.03(D)(2) (1987). Ohio's statutory scheme thus contemplates that juries will bear a crucial responsibility in deciding whether Ohio will impose a death sentence: making their recommendation necessary, if not sufficient, to any sentence of death. The question this case presents is whether an instruction stressing the preliminary nature of a jury's decision can so minimize the jury's sense of responsibility for its decision and so increase the likelihood of a recommendation of death as to be unconstitutional despite the accuracy of the instruction. This question is particularly sharpened here, where the state court evidently concedes that the instruction serves no valid state interest and in-

deed "emphatically emphasize[s]" that the instruction should not be given.

In *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985), this Court laid down a general prohibition against trial comments that minimize a jury's sense of responsibility for a death sentence. We stated: "This Court has always premised its capital punishment decisions on the assumption that a capital sentencing jury recognizes the gravity of its task and proceeds with the appropriate awareness of its 'truly awesome responsibility.'" *Id.*, at 341. The Eighth Amendment was thus violated, we concluded, when the State attempted "to minimize the jury's sense of responsibility for determining the appropriateness of death," *ibid.*, by suggesting that the sentencing jury was not ultimately responsible because appellate review would be available. Such a suggestion, we reasoned, biased a jury in favor of death sentences in four ways: (1) a jury comprised of laypersons might not understand the limited nature of appellate review; (2) a jury might reach a death verdict, even if it was unconvinced death was the appropriate punishment, in order to "send a message" of extreme disapproval; (3) some jurors might correctly assume that judicial review can reverse a death sentence but not a life sentence and thus might reach a death verdict in order to delegate, and thus avoid, responsibility for making a decision between death and life; and (4) jurors otherwise reluctant to vote for a death sentence might, particularly on a divided jury, view the availability of judicial review as a good argument for giving in to a death sentence verdict. *Id.*, at 330–333.

Of these four sources of bias, only the first is arguably not present in this case because a jury's recommendation of death is subject to plenary judicial review in Ohio. The other three sources of bias cited in *Caldwell* are, however, just as applicable here as ·they were in *Caldwell*. This suggests that an accurate and nonmisleading instruction may still raise sufficient fear of jury bias to make it unconstitutional under the *Caldwell* analysis. Indeed, a four-Justice plurality of the Court implied that an instruction that minimized a jury's sense of responsibility for a death sentence had to be "*both* accurate and relevant to a legitimate state penological interest" to survive Eighth Amendment scrutiny. *Id.*, at 335–336 (MARSHALL, J., joined by BRENNAN, BLACKMUN, and STEVENS, JJ.) (emphasis added). The plurality went on to suggest that an accurate and nonmisleading instruction about appellate review

might be invalid because it would serve no valid state penological interest:

> "That appellate review is available to a capital defendant sentenced to death is no valid basis for a jury to return such a sentence if otherwise it might not. It is simply a factor that in itself is wholly irrelevant to the determination of the appropriate sentence. The argument here urged the jurors to view themselves as taking only a preliminary step toward the actual determination of the appropriateness of death—a determination which would eventually be made by others and for which the jury was not responsible. Creating this image in the minds of the capital sentencers is not a valid state goal . . . ." *Id.*, at 336.

This analysis is equally applicable to an accurate instruction regarding the nonbinding nature of an Ohio jury's recommendation of death. JUSTICE O'CONNOR, however, did not join the part of *Caldwell* articulating this analysis and wrote separately to state her view that an accurate and nonmisleading instruction would present no constitutional difficulties. *Id.*, at 341–343 (concurring in part and concurring in judgment). Accordingly, because Justice Powell did not take part in *Caldwell*, see *id.*, at 341, a majority of this Court has never expressed a view as to the constitutional status of accurate and nonmisleading instructions that minimize jury responsibility by emphasizing the preliminary nature of their decision.

I would therefore vote to grant the petition and set the case for oral argument on the issue left unresolved by *Caldwell.*