DUGGER, SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS, ET AL. *v.* ADAMS

No. 87–121.   Argued November 1, 1988—Decided February 28, 1989

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and STEVENS, JJ., joined, *post*, p. 412.

*Margene A. Roper*, Assistant Attorney General of Florida, argued the cause for petitioners. With her on the brief was *Robert A. Butterworth*, Attorney General.

*Ronald J. Tabak* argued the cause for respondent. With him on the brief were *Larry Helm Spalding* and *Mark Olive*.*

JUSTICE WHITE delivered the opinion of the Court.

In this case we decide whether our decision in *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985), provided cause for respondent's failure to challenge the trial court's instructions in accordance with state procedures.

Respondent Aubrey Dennis Adams, Jr., was charged with the first-degree murder of 8-year-old Trisa Gail Thornley, and the State sought to impose the death penalty. At the start of jury selection for respondent's trial, the trial judge

---

*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

*Michael Mello* and *Susan Apel* filed a brief for the National Legal Aid and Defender Association et al. as *amici curiae*.

undertook to instruct the prospective jurors on their "advisory" role under Florida law.[1]   The judge informed the initial panel of prospective jurors:

> "The Court is not bound by your recommendation.   The ultimate responsibility for what this man gets is not on your shoulders.   It's on my shoulders.   You are merely an advisory group to me in Phase Two.   You can come back and say, Judge, we think you ought to give the man life.   I can say, I disregard the recommendation of the Jury and I give him death.   You can come back and say, Judge, we think he ought to be put to death.   I can say, I disregard your recommendation and give him life.   So that this conscience part of it as to whether or not you're going to put the man to death or not, that is not your decision to make.   That's only my decision to make and it has to be on my conscience.   It cannot be on yours." App. 19–20.

---

[1] Florida Stat. § 921.141 (1985) provides in relevant part as follows:

"(2) ADVISORY SENTENCE BY THE JURY.—After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:

"(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);

"(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and

"(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.

"(3) FINDINGS IN SUPPORT OF SENTENCE OF DEATH.—Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:

"(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and

"(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances."

The judge had intended to give this explanation to the entire venire before beginning the selection process but forgot to do so, and so he gave a similar explanation each time new prospective jurors were seated. As a result, each of the jurors ultimately selected heard the explanation at least once, and several heard it a number of times. In addition, the judge interrupted counsel's *voir dire* on two occasions to repeat that the court, not the jury, was responsible for sentencing, and again instructed the jury to that effect before it began its deliberations. Defense counsel did not object at any point to these instructions.

On October 20, 1978, the jury found respondent guilty of first-degree murder. After a separate sentencing hearing, the jury recommended that he be sentenced to death, and the trial judge imposed a death sentence.[2] The Florida Supreme Court affirmed respondent's conviction and sentence on direct appeal, *Adams* v. *State*, 412 So. 2d 850 (1982), and this Court denied certiorari, 459 U. S. 882 (1982). Respondent did not allege as error, on either state or federal grounds, the trial judge's instructions to the jurors on their responsibility for the sentence they would recommend.

In September 1984, the Florida Supreme Court affirmed the denial of respondent's first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. *Adams* v. *State*, 456 So. 2d 888. Again, respondent did not challenge the trial judge's statements to the jurors on their responsibility for the death sentence. Respondent next filed his first federal habeas petition in District Court; once again he did not challenge the trial judge's instructions. The Dis-

---

[2]As aggravating circumstances, the trial judge found that the murder was committed while respondent was engaged in or attempting kidnaping and rape, was committed to avoid arrest, and was especially heinous, atrocious, or cruel. As mitigating circumstances, the trial judge found that respondent had no significant history of prior criminal activity, was under the influence of extreme emotional or mental disturbance at the time of the murder because he and his wife were getting a divorce, and was only 20 years of age.

trict Court denied his habeas petition on September 18, 1984, *Adams* v. *Wainwright*, No. 84–170—Civ–Oc–16 (MD Fla.), the Eleventh Circuit affirmed, 764 F. 2d 1356 (1985), and this Court denied certiorari, 474 U. S. 1073 (1986).

On June 11, 1985, *Caldwell* v. *Mississippi*, 472 U. S. 320, was decided. The Court there held that remarks by the prosecutor in a capital case that misinformed the jury as to the role of appellate review violated the Eighth Amendment. *Id.*, at 336 (plurality opinion); *id.*, at 341–342 (O'CONNOR, J., concurring in part and concurring in judgment). Based on *Caldwell*, respondent filed a second motion for postconviction relief under Florida Rule 3.850, challenging for the first time the trial judge's statements to the jurors that they were not responsible for the sentence they recommended and arguing that the judge's instructions violated the Eighth Amendment by misinforming the jury of its role under Florida law. According to respondent, although the Florida death penalty statute provided that the jury's recommendation was only advisory, the Florida Supreme Court had held that a trial judge could only override the jury's verdict if the facts were "so clear and convincing that virtually no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (1975) *(per curiam)*. Since the trial judge in this case told the jurors that the sentencing responsibility was solely his and failed to tell them that he could override their verdict only under limited circumstances, respondent argued, the judge misled the jury in violation of *Caldwell*. The Florida Supreme Court refused to address respondent's argument on the merits, however, because respondent had failed to raise the argument on direct appeal. *Adams* v. *State*, 484 So. 2d 1216, 1217, cert. denied, 475 U. S. 1103 (1986).

The *Caldwell* claim was then raised in respondent's second federal habeas petition. The District Court held that the claim was procedurally barred, and that, alternatively, respondent's *Caldwell* claim was meritless. *Adams* v. *Wainwright*, No. 86–64—Civ–Oc–16 (MD Fla., Mar. 7, 1986), p. 9,

App. to Pet. for Cert. A–43, A–56—A–60. The Eleventh Circuit reversed. *Adams* v. *Wainwright*, 804 F. 2d 1526 (1986), modified on denial of rehearing, 816 F. 2d 1493 (1987). The Court of Appeals held that respondent's *Caldwell* claim "was so novel at the time of [his] trial in October 1978 and his sentencing and appeal in early 1979 that its legal basis was not reasonably available at that time"; therefore, he had established cause for his procedural default. 816 F. 2d, at 1498. The court proceeded to address the merits of respondent's *Caldwell* claim, concluding that the trial judge's instructions violated the Eighth Amendment. 804 F. 2d, at 1532–1533.

We granted certiorari to review the Eleventh Circuit's holding that *Caldwell* provides cause for respondent's procedural default,[3] 485 U. S. 933 (1988), and we now reverse.

In *Wainwright* v. *Sykes*, 433 U. S. 72, 87 (1977), this Court required that habeas petitioners show "cause" and "prejudice" before federal courts will review claims that the state courts have found procedurally defaulted. We have reaffirmed this requirement on several occasions. See *Murray* v. *Carrier*, 477 U. S. 478, 494–495 (1986); *Engle* v. *Isaac*, 456 U. S. 107, 129 (1982). We have, however, "left open 'for

---

[3] Shortly after the Eleventh Circuit's decision in this case, the Tenth Circuit also held that *Caldwell* was sufficiently novel to provide cause for a procedural default. *Dutton* v. *Brown*, 812 F. 2d 593, 596 (en banc) (finding cause for procedural default because "[t]he law petitioner relies on did not become established until the *Caldwell* decision in 1985"), cert. denied, 484 U. S. 836 (1987). Previously, however, the Fifth Circuit had held in *Moore* v. *Blackburn*, 774 F. 2d 97 (1985) (alternative holding), cert. denied, 476 U. S. 1176 (1986), that the failure to raise a *Caldwell* claim in a prior habeas petition was an abuse of the writ, see 28 U. S. C. § 2254 Rule 9(b). According to the Court of Appeals, "[t]hat a competent attorney should have been aware of this claim is apparent from the Supreme Court's *Caldwell* opinion." 774 F. 2d, at 98.

Although petitioners allege in their brief that respondent's failure to raise a *Caldwell* claim in his first federal habeas petition constitutes an abuse of the writ, we need not address this contention given our resolution of the case on procedural bar grounds.

resolution in future decisions the precise definition'" of cause and prejudice. *Amadeo* v. *Zant*, 486 U. S. 214, 221 (1988) (quoting *Sykes, supra,* at 87). See also *Reed* v. *Ross,* 468 U. S. 1, 13 (1984).

*Reed* v. *Ross* held that one way a petitioner can establish cause is by showing that "a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Id.,* at 16. The Eleventh Circuit, relying on *Reed,* held in this case that "Eighth Amendment jurisprudence at the time of [respondent's] procedural default did not provide a reasonable basis" on which to raise a *Caldwell* claim. 816 F. 2d, at 1499. The Court of Appeals reviewed our prior cases and concluded that none of them indicated that statements such as the ones made by the trial judge here "implicated the Eighth Amendment prohibition against cruel and unusual punishment." *Ibid.* The Court also noted that it could find no decisions by other courts suggesting that "this type of Eighth Amendment claim was being raised at that time." *Ibid.*

We believe that the Eleventh Circuit failed to give sufficient weight to a critical fact that leads us to conclude, without passing on the Court of Appeals' historical analysis, that *Caldwell* does not provide cause for respondent's procedural default. As we have noted, the decision in "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Darden* v. *Wainwright,* 477 U. S. 168, 184, n. 15 (1986). As respondent conceded at oral argument, if the challenged instructions accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim. To establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law. See, *e. g.,* Tr. of Oral Arg. 29, 32, 33, and 36–37. Respondent therefore must be asserting in this case that the trial court's re-

marks violated state law, and in finding a *Caldwell* violation in this case, the Court of Appeals must have concluded that the remarks in question were error under Florida law.[4]

If respondent and the Court of Appeals are correct in this regard, respondent plainly had the basis for an objection and an argument on appeal that the instructions violated state law. See *Pait* v. *State*, 112 So. 2d 380, 383–384 (Fla. 1959) (holding that misinforming the jury of its role constitutes reversible error); *Blackwell* v. *State*, 79 So. 731, 735–736 (Fla. 1918) (same).[5] Yet, despite the availability of this claim under state law, respondent did not object to the remarks at trial or challenge them on appeal. As a result, Florida law bars respondent from raising the issue in later state proceedings. See, *e. g.*, *Adams*, 484 So. 2d, at 1217.

Respondent offers no excuse for his failure to challenge the remarks on state-law grounds, and we discern none that would amount to good cause in a federal habeas corpus proceeding. Had respondent objected at the time and asserted error under state law, and had the trial or appellate court sustained his objection, the error would have been corrected in the state system. Had his objection been overruled and that ruling sustained on appeal, we would very likely know that the instruction was an accurate reflection of state law. In either event, it is doubtful that the later decision in *Caldwell* would have provoked the filing of a second habeas corpus petition. In these circumstances, the fact that it turns out that the trial court's remarks were objectionable on federal as well as state grounds is not good cause for his failure to follow Florida procedural rules.

---

[4] We do not decide whether in fact the jury as instructed in this case was misinformed of its role under Florida law. The petition for certiorari did not raise this issue, and the merit of respondent's *Caldwell* claim is irrelevant to our disposition of the case.

[5] Both of these cases were cited in *Caldwell* v. *Mississippi*, 472 U. S. 320, 334, n. 5 (1985), as support for the decision in that case.

*Reed* v. *Ross* is of no help to respondent. In that case, the defendant failed to challenge on appeal an instruction that was plainly valid under the settled law of the State. Six years later, it was held in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975), that such an instruction violated the Due Process Clause of the Federal Constitution. We held that there was a good cause for the procedural default because a challenge to the instruction was "so novel that its legal basis [was] not reasonably available to counsel." 468 U. S., at 16. Hence, there was no reason for suspecting that defense counsel was flouting state procedures for tactical or other reasons. But here respondent claims that the court's remarks were invalid under state law at the time; yet those remarks were not objected to nor were they challenged on appeal. Unlike *Reed*, the legal basis for a challenge was plainly available, and it would not be safe to assume that the failure to object was not for tactical or other reasons that will not excuse the default in a habeas corpus proceeding. Indeed, at the time of respondent's trial there was some suggestion that comments such as those by the trial judge would incline the jury toward leniency rather than toward recommending a death sentence. See *Dobbert* v. *Florida*, 432 U. S. 282, 294, and n. 7 (1977). Furthermore, because in *Reed* the legal basis for the claim at issue was so lacking, it could not be said that adjudicating the claim in federal court would infringe on the interest of the state courts in enforcing their procedural rules. But here, as we have said, the State has every interest in having the defendant challenge a faulty instruction in a timely manner so that it can correct the misstatement, and that interest does not disappear when it is later held that the instruction violates the Federal Constitution if it erroneously describes the role of the jury under state law.

We agree with respondent and the Court of Appeals that the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution. See 816 F. 2d, at 1499, n. 6. It is clear that

"mere errors of state law are not the concern of this Court unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Barclay* v. *Florida*, 463 U. S. 939, 957–958 (1983) (plurality opinion) (citation omitted). But the issue in this case is not whether respondent could have obtained federal habeas relief at the time of his trial for the trial judge's instructions. Rather, the issue is whether we should exercise our equitable power to overlook respondent's state procedural default. *Reed*, 468 U. S., at 9.

Neither do we hold that whenever a defendant has any basis for challenging particular conduct as improper, a failure to preserve that claim under state procedural law bars any subsequently available claim arising out of the same conduct. Indeed, respondent here could have challenged the improper remarks by the trial judge at the time of his trial as a violation of due process. See *Donnelly* v. *DeChristoforo*, 416 U. S. 637 (1974). Rather, what is determinative in this case is that the ground for challenging the trial judge's instructions — that they were objectionable under state law — was a necessary element of the subsequently available *Caldwell* claim. In such a case, the subsequently available federal claim does not excuse the procedural default.[6]

---

[6] Respondent asserts, as an alternative basis for upholding the judgment of the Court of Appeals, that the procedural bar on which the Florida Supreme Court relied is not "adequate"—that is, it has not been "consistently or regularly applied." *Johnson* v. *Mississippi*, 486 U. S. 578, 589 (1988). The Eleventh Circuit stated that "[i]t is doubtful . . . that an adequate and independent state-law ground is present in this case," 816 F. 2d 1493, 1497 (1987), but went on to find that respondent had established cause and prejudice for his default.

First, respondent argues that under Florida law, claims based on major changes in constitutional law that occur after a defendant's direct appeal are cognizable in a Rule 3.850 proceeding. Respondent contends that, in the words of the Eleventh Circuit, his "*Caldwell* claim is the very type of claim for which Florida created the Rule 3.850 procedure." *Ibid.* But, given our conclusion that *Caldwell* does not excuse respondent's proce-

The judgment of the Court of Appeals is therefore reversed.

*It is so ordered.*

---

dural default, we can hardly fault the Florida Supreme Court for reaching a similar conclusion under its own procedural rules.

Second, respondent asserts, and the dissent agrees, that the Florida Supreme Court has failed to apply its procedural rule consistently and regularly because it has addressed the merits in several cases raising *Caldwell* claims on postconviction review. In the vast majority of cases, however, the Florida Supreme Court has faithfully applied its rule that claims not raised on direct appeal cannot be raised on postconviction review. See *Bertolotti* v. *State*, 534 So. 2d 386, 387, n. 2 (1988); *Clark* v. *State*, 533 So. 2d 1144, 1145 (1988); *Jones* v. *Dugger*, 533 So. 2d 290, 292 (1988); *Woods* v. *State*, 531 So. 2d 79, 83 (1988); *Cave* v. *State*, 529 So. 2d 293, 296 (1988); *Preston* v. *State*, 528 So. 2d 896, 899 (1988); *Doyle* v. *State*, 526 So. 2d 909, 911 (1988); *Ford* v. *State*, 522 So. 2d 345, 346 (1988), cert. pending No. 88–5582; *Henderson* v. *Dugger*, 522 So. 2d 835, 836, n. (1988); *Tafero* v. *Dugger*, 520 So. 2d 287, 289 (1988); *Foster* v. *State*, 518 So. 2d 901, 901–902 (1987), cert. denied, 487 U. S. 1240 (1988); *Phillips* v. *Dugger*, 515 So. 2d 227, 227–228 (1987); *Copeland* v. *Wainwright*, 505 So. 2d 425, 427–428, vacated on other grounds, 484 U. S. 807 (1987); *Aldridge* v. *State*, 503 So. 2d 1257, 1259 (1987); *State* v. *Sireci*, 502 So. 2d 1221, 1223–1224 (1987); *Adams* v. *State*, 484 So. 2d 1216, 1217, cert. denied, 475 U. S. 1103 (1986); *Middleton* v. *State*, 465 So. 2d 1218, 1226 (1985).

Moreover, the few cases that respondent and the dissent cite as ignoring procedural defaults do not convince us that the Florida Supreme Court fails to apply its procedural rule regularly and consistently. In *Darden* v. *State*, 475 So. 2d 217, 218 (1985), the only alleged default discussed by the court involved the failure to raise the *Caldwell* claim in a prior Rule 3.850 proceeding. In *Mann* v. *State*, 482 So. 2d 1360, 1362 (1986) (as construed in *Mann* v. *Dugger*, 844 F. 2d 1446, 1448, n. 4 (CA11 1988), cert. pending, No. 87–2073), the court did not even expressly mention the defendant's *Caldwell* claim. In *Combs* v. *State*, 525 So. 2d 853, 856 (1988), the Florida court noted that "[i]n *Caldwell*, unlike the instant case, the defendant had objected to the Mississippi prosecutor's comment," while in *Daugherty* v. *State*, 533 So. 2d 287, 288, cert. denied, 488 U. S. 959 (1988), the court merely relied on *Combs*. Finally, in *Glock* v. *Dugger*, 537 So. 2d 99, 102 (1989), the court merely stated that "the trial court was justified in summarily denying relief" on the petitioner's 16 claims; it is not clear from the opinion whether the trial court held that the *Caldwell* claim was or was not procedurally barred. Regardless of whether any of these cases might

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE STEVENS join, dissenting.

Although this Court repeatedly has ruled that the Eighth Amendment prohibits the arbitrary or capricious imposition of the death penalty,[1] the Court today itself arbitrarily im-

---

be subject to federal habeas review because of the lack of a plain statement that the decision was based on state-law grounds, an issue we considered in *Harris* v. *Reed*, *ante*, p. 255, we do not believe that they are sufficient to undercut the adequacy of the Florida procedural rule.

Respondent also argues that we should overlook his procedural default because failing to do so would result in a "fundamental miscarriage of justice." We disagree. In *Murray* v. *Carrier*, 477 U. S. 478, 496 (1986), this Court stated that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." We made clear, however, that such a case would be an "extraordinary" one, *ibid.*, and have since recognized the difficulty of translating the concept of "actual" innocence from the guilt phase to the sentencing phase of a capital trial, *Smith* v. *Murray*, 477 U. S. 527, 537 (1986). We do not undertake here to define what it means to be "actually innocent" of a death sentence. But it is clear to us that the fact that the trial judge in this case found an equal number of aggravating and mitigating circumstances is not sufficient to show that an alleged error in instructing the jury on sentencing resulted in a fundamental miscarriage of justice.

The dissent "assume[s], *arguendo*," that a fundamental miscarriage of justice results whenever "there is a substantial claim that the constitutional violation undermined the accuracy of the sentencing decision." *Post*, at 415, n. 4. According to the dissent, since "the very essence of a *Caldwell* claim is that the accuracy of the sentencing determination has been unconstitutionally undermined," *post*, at 423, the standard for showing a fundamental miscarriage of justice necessarily is satisfied. We reject this overbroad view. Demonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is "actually innocent" of the sentence he or she received. The approach taken by the dissent would turn the case in which an error results in a fundamental miscarriage of justice, the "extraordinary case," *Carrier*, *supra*, at 496, into an all too ordinary one.

[1] *E. g.*, *Johnson* v. *Mississippi*, 486 U. S. 578, 585–587 (1988); *Maynard* v. *Cartwright*, 486 U. S. 356, 362–363 (1988); *Booth* v. *Maryland*, 482

poses procedural obstacles to thwart the vindication of what apparently is a meritorious Eighth Amendment claim.

In this case, the Eleventh Circuit determined that respondent Aubrey Dennis Adams was sentenced to death in violation of the Eighth Amendment, as interpreted in *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985).[2] This Court now reverses that determination, not because it finds the death sentence valid, but because respondent was late in presenting his claim to the Florida courts. In other words, this Court is sending a man to a presumptively unlawful execution because he or his lawyers did not raise his objection at what is felt to be the appropriate time for doing so.

I would understand, and accept, the Court's decision if the federal courts lacked authority to remedy the unconstitutional death sentence. But, manifestly, that is not the case. In reversing the judgment of the Court of Appeals, the majority relegates to a footnote its discussion of established doctrines that, upon full consideration, might entitle respondent to an affirmance, not a reversal, of that judgment. Thus, the majority not only capriciously casts aside precedent to reinstate an unconstitutionally "unreliable"[3] death sentence

---

U. S. 496, 509 (1987); *California* v. *Ramos*, 463 U. S. 992, 999 (1983); *Zant* v. *Stephens*, 462 U. S. 862, 874 (1983).

[2] In *Caldwell*, this Court ruled that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U. S., at 328–329.

[3] See *Adams* v. *Wainwright*, 804 F. 2d 1526, 1533 (CA11 1986); 816 F. 2d 1493, 1501 (CA11 1987) (case below). The Eleventh Circuit, in a subsequent case heard en banc, had occasion to express unanimous approval of the panel decision here that respondent's *Caldwell* claim is meritorious — even as the en banc Eleventh Circuit divided sharply over the validity of *Caldwell* claims brought by other prisoners on weaker factual records. See *Harich* v. *Dugger*, 844 F. 2d 1464, 1473 (1988), cert. pending, No. 88–5216. Moreover, in the instant case, petitioners did not even seek review of the Court of Appeals' determination, under *Caldwell*, that respondent's death sentence violated the Eighth Amendment. See *ante*, at 408, n. 4.

purely for procedural reasons, but also compounds that capriciousness by issuing an opinion in which decisive issues receive only dismissive consideration. Given this treatment of the case, it is worth reflecting for a moment on the special inappropriateness and cruelty of the impending execution.

I

There is no need to dwell upon the history of the Court's decisions on whether a criminal defendant's failure to comply with a rule of state procedure precludes review of his conviction or sentence in a subsequent federal habeas corpus proceeding. By now it is settled that an adequate and independent state procedural ground, which would have precluded direct review in this Court, bars habeas review unless the habeas petitioner can demonstrate "cause" for the procedural default and "prejudice" resulting from the alleged constitutional violation. *Wainwright* v. *Sykes*, 433 U. S. 72, 84, 87, 90–91 (1977).

Since *Sykes*, the Court has refined the "cause" and "prejudice" standard, see, *e. g.*, *Reed* v. *Ross*, 468 U. S. 1 (1984); *Engle* v. *Isaac*, 456 U. S. 107 (1982), and also has held that habeas review of a defaulted claim is available, even absent "cause" for the default, if the failure to consider the claim would result in a "fundamental miscarriage of justice." *Smith* v. *Murray*, 477 U. S. 527, 537–538 (1986); *Murray* v. *Carrier*, 477 U. S. 478, 495–496 (1986). In *Smith*, this Court applied the "fundamental miscarriage of justice" principle to an alleged sentencing error in a capital case. In an effort to equate review of convictions and sentences under this principle, the Court apparently settled upon the following standard: the habeas petitioner must make a "substantial" showing "that the alleged error undermined the accuracy of the guilt or sentencing determination." 477 U. S., at 539. Even this narrow standard makes clear that the "fundamental miscar-

riage of justice" principle is applicable to allegations of capital sentencing errors.[4]

Thus, under our precedents, the Court of Appeals was correct to review respondent's procedurally defaulted *Caldwell* claim if any one of three conditions is met: (1) the Florida Supreme Court's finding of procedural default was not an adequate and independent ground for its decision; (2) respondent can show cause for and prejudice from his default; or (3) the failure to review respondent's claim would result in a fundamental miscarriage of justice. Yet the Court devotes but a single footnote at the end of its opinion to the first and third of these principles. *Ante*, at 410–412, n. 6.

The Court acknowledges, as it must, that it granted certiorari to consider whether respondent had established "cause" for his procedural default. *Ante*, at 406. But this interest in the "cause" inquiry does not permit the Court to consign to second-class status the rest of the analysis necessary for determining whether the Court of Appeals properly considered the merits of respondent's *Caldwell* claim. Indeed, once the other two principles receive the attention they deserve, it becomes evident that each provides an alternative basis for affirming the Court of Appeals' judgment.

---

[4] One may well be uncertain as to what meaning *Smith* gave to the term "fundamental miscarriage of justice." The opinion cites *Murray* v. *Carrier*, which states that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U. S., at 496. The *Smith* majority acknowledged, however, that the "concept of 'actual' . . . innocence does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense." *Id.*, at 537. Nonetheless, as is said in the text here, *Smith* appears to have rendered this translation: the refusal to review the constitutionality of a death sentence does not result in a fundamental miscarriage of justice unless there is a substantial claim that the constitutional violation undermined the accuracy of the sentencing decision. In any event, in evaluating whether respondent's procedural default precluded the Court of Appeals' consideration of his *Caldwell* claim, I assume, *arguendo*, that this is the governing standard after *Smith*.

## II

The majority recognizes that a state court's reliance on a procedural bar rule is inadequate if that rule "has not been 'consistently or regularly applied.'" *Ante*, at 410, n. 6, quoting *Johnson* v. *Mississippi*, 486 U. S. 578, 589 (1988). The majority, however, asserts that in respondent's case the Florida Supreme Court's reliance on procedural bar grounds was adequate under this standard. I must disagree.

When respondent raised his *Caldwell* claim for the first time in his second postconviction motion under Rule 3.850 of the Florida Rules of Criminal Procedure, the Florida Supreme Court held this claim, among others, procedurally barred because respondent did not raise the claim in his direct appeal. See *Adams* v. *State*, 484 So. 2d 1216, 1217, cert. denied, 475 U. S. 1103 (1986). The court further found that presenting the *Caldwell* claim in a successive Rule 3.850 proceeding was an abuse of the Rule. 484 So. 2d, at 1217.[5] This decision issued on March 3, 1986.

Prior to that date, however, the Florida Supreme Court, in two Rule 3.850 cases, did not foreclose review of *Caldwell* claims, notwithstanding the existence of similar procedural defaults. First, in *Darden* v. *State*, 475 So. 2d 217 (1985), which also involved a second Rule 3.850 motion, the Florida

---

[5] The Court of Appeals found, 816 F. 2d, at 1497, n. 3, and respondent argues, that the Florida Supreme Court did not hold the *Caldwell* claim an abuse of the Rule 3.850 procedure. This reading of the Florida court's opinion, however, appears to be contrary to its plain language:

"Having carefully reviewed [respondent's remaining claims], we find that each one either was or should have been raised on direct appeal. We therefore find that the review sought by [respondent] is barred *both* by Rule 3.850 as 'an abuse of the procedure governed by these rules,' and by the caselaw which has firmly established the necessity of raising all available issues upon direct appeal." 484 So. 2d, at 1217 (emphasis added).

It makes no difference for present purposes, however, whether respondent's claim was held barred on one ground or two; for reasons set forth in the text, neither procedural bar holding constitutes an adequate state ground for the Florida Supreme Court's judgment.

Supreme Court considered the merits of the *Caldwell* claim even though the prisoner there, like respondent here, failed to argue either on direct appeal or in his first Rule 3.850 motion that the jury was misled about its role in the capital sentencing process. See *Darden* v. *State*, 329 So. 2d 287 (1976) (direct appeal), cert. dism'd, 430 U. S. 704 (1977); *Darden* v. *State*, 372 So. 2d 437 (1979) (first Rule 3.850 motion).[6]  Indeed, in "choos[ing] to address" the merits of the defaulted *Caldwell* claim in *Darden*, the Florida Supreme Court explicitly rebuffed the State's efforts to have the court reject the claim on the ground that its presentation constituted an abuse of the Rule 3.850 process. See 475 So. 2d, at 218.

Second, in *Mann* v. *State*, 482 So. 2d 1360 (1986), the Florida Supreme Court considered the merits of a *Caldwell* claim (among others), even though the claim was not raised on direct appeal. As the Eleventh Circuit noted, the Florida Supreme Court in *Mann* simply "chose not to enforce its own procedural default rule." *Mann* v. *Dugger*, 844 F. 2d 1446, 1448, n. 4 (1988) (en banc), cert. pending, No. 87–2073. Thus, by the time that it decided *Adams*, the Florida Supreme Court had failed to apply the State's procedural bar rules to at least two defaulted *Caldwell* claims.

Furthermore, in no case prior to *Adams* did the Florida Supreme Court plainly hold a *Caldwell* claim procedurally barred. Petitioners cite *Middleton* v. *State*, 465 So. 2d 1218, 1226 (1985), but it surely is questionable whether the reference to a procedural default in that case would satisfy the "plain statement" standard of *Harris* v. *Reed*, *ante*, p. 255.

---

[6] On direct appeal, Darden challenged certain statements of the prosecutor as unconstitutionally prejudicial. These statements, however, did not concern the jury's role in the sentencing process and Darden did not suggest that the jury was misled about its role. See 329 So. 2d, at 289–291. In his second Rule 3.850 proceeding, in contrast, he "also attempt[ed] to show that as in *Caldwell*, the jury was misled as to its role in the sentencing process." 475 So. 2d, at 221.

In any event, even counting *Middleton* as a case in which the Florida Supreme Court invoked a procedural bar rule to preclude review of a *Caldwell* claim, it is impossible to say, in light of *Darden* and *Mann*, that the decision in *Adams* was an application of "strictly or regularly followed" state procedural requirements. *Barr* v. *City of Columbia*, 378 U. S. 146, 149 (1964). Consequently, the state-law ground in *Adams* would not have foreclosed this Court's consideration of the *Caldwell* claim had we chosen to exercise our certiorari jurisdiction on direct review, and, *a fortiori*, it does not preclude review of the *Caldwell* claim in this habeas proceeding. See *Wainwright* v. *Sykes*, 433 U. S. 72 (1977).

The majority's reasons for discounting *Darden* and *Mann* are not persuasive. As to *Darden*, the majority observes that the Florida Supreme Court did not discuss the prisoner's failure to raise his *Caldwell* claim on direct appeal, but rather mentioned only the failure to raise the *Caldwell* claim in a prior Rule 3.850 proceeding. But this observation misses the point. The fact remains that Darden on direct appeal did not raise his claim that the jury was misled about its role in sentencing him. See 329 So. 2d, at 288–291. Accordingly, *Darden* is a case in which the Florida Supreme Court did not bar review of a *Caldwell* claim, even though the claim was raised neither on direct appeal nor in the first Rule 3.850 proceeding. The treatment of the *Caldwell* claim in *Darden* is thus starkly inconsistent with the treatment of the *Caldwell* claim in *Adams*, despite the identical procedural posture of the two cases. For this reason alone, *Darden* demonstrates the inadequacy of the procedural bar ruling in *Adams*.

As to *Mann*, the majority notes that the court did not specifically mention the prisoner's *Caldwell* claim. But again, the majority misses the point. In respondent's case, too, the Flordia Supreme Court did not expressly mention the *Caldwell* claim. See 484 So. 2d, at 1217–1218. The issue here, however, is not whether the Florida Supreme Court in each case identified the claim by name, but whether it held the

claim procedurally barred. In *Mann*, it did not; in *Adams*, it did. Thus, the inconsistent treatment of the *Caldwell* claims in *Mann* and *Adams* supports a finding of inadequacy here.

In my view, then, the majority's attempts to distinguish *Darden* and *Mann* are clearly unavailing, and these two cases suffice to show that respondent's procedural default does not constitute an adequate state ground barring review of his *Caldwell* claim. Moreover, decisions of the Florida Supreme Court handed down after *Adams* reinforce the conclusion that that court has been inconsistent in applying its procedural bar rules to *Caldwell* claims. In *Combs* v. *State*, 525 So. 2d 853 (1988), the court did not invoke procedural default as a basis for decision, notwithstanding the prisoner's failure to present his *Caldwell* claim on direct appeal. See *Combs* v. *State*, 403 So. 2d 418, 420–421 (1981), cert. denied, 456 U. S. 984 (1982). Rather, the court affirmatively chose to address the merits of the *Caldwell* claim, largely because it wanted to announce its view that *Caldwell* is inapplicable to Florida capital cases.[7]

The Florida Supreme Court also did not rely on procedural bar grounds in *Daugherty* v. *State*, 533 So. 2d 287, cert. denied, 488 U. S. 959 (1988), even though that case involved a second Rule 3.850 motion and the convict there, like respondent here, did not raise his *Caldwell* claim either on direct review or in his first Rule 3.850 motion. See *Daugherty* v. *State*, 419 So. 2d 1067 (1982) (direct appeal), cert. denied, 459 U. S. 1228 (1983); *Daugherty* v. *State*, 505 So. 2d 1323 (first Rule 3.850 motion), cert. denied, 484 U. S. 891 (1987). Rather, in *Daugherty*, the court rested its rejection of the

---

[7] The majority attempts to dismiss *Combs* by saying that the court there noted the defendant's failure to raise the *Caldwell* claim at trial. But it is clear that the *Combs* decision did not rely on any procedural default as a basis for rejecting the *Caldwell* claim in that case. Rather, the *Combs* opinion is emphatic in expressing its desire to address the *Caldwell* claim on the merits. See 525 So. 2d, at 854–855. Consequently, *Combs* is further proof of the inconsistent treatment of *Caldwell* claims in Florida postconviction proceedings.

*Caldwell* claim solely on the ground that in *Combs* the court had "determined that *Caldwell* is inapplicable in Florida." 533 So. 2d, at 288.

Most recently, in *Glock* v. *Dugger*, 537 So. 2d 99 (1989), the Florida Supreme Court did not hold a *Caldwell* claim procedurally barred, even though the claim was not raised on direct appeal. *Puiatti* v. *State*, 495 So. 2d 128, 132 (Fla. 1986).[8] In sum, *Combs*, *Daugherty*, and *Glock* convincingly demonstrate that the Florida Supreme Court still does not strictly apply its procedural bar rules to *Caldwell* claims. Contrasting all five cases *(Darden, Mann, Combs, Daugherty,* and *Glock)* with *Adams*, one cannot seriously contend that the Florida Court has applied its procedural bar rules "evenhandedly to all similar claims." *Hathorn* v. *Lovorn*, 457 U. S. 255, 263 (1982).[9]

---

[8] The majority's efforts to discount *Daugherty* and *Glock* reveal a fundamental misunderstanding of the consistency inquiry under *Johnson* v. *Mississippi*, 486 U. S. 578 (1986). This inquiry requires considering whether: (1) the prisoner asserted a *Caldwell* claim in his Rule 3.850 motion; (2) the *Caldwell* claim was not raised on direct appeal (or in a prior Rule 3.850 motion); and (3) the Florida Supreme Court did not hold the *Caldwell* claim procedurally barred. *Daugherty* and *Glock* satisfy all these criteria. Thus, they are cases in which the Florida Supreme Court failed to apply its procedural bar rules to *Caldwell* claims, thereby undercutting the consistency of the court's application of those rules to similarly situated claims.

That *Daugherty* relied on *Combs* does not negate this fact. On the contrary, *Daugherty*'s exclusive reliance on *Combs* as the basis for deciding the *Caldwell* issue proves conclusively that *Daugherty* was not an application of a procedural bar rule. Similarly, regarding *Glock*, it is irrelevant "whether the trial court held that the *Caldwell* claim was or was not procedurally barred." *Ante*, at 411–412, n. 6. Either way, it remains true that the Florida Supreme Court did not hold the *Caldwell* claim procedurally barred, which is the relevant point for the consistency issue.

[9] To be sure, in 1987 and 1988, the Florida Supreme Court most of the time held *Caldwell* claims to be procedurally barred, but this fact does not undermine the conclusion that, at the very least, when the Florida Supreme Court decided *Adams*, it did not "consistently or regularly" apply its procedural bar rule to a *Caldwell* claim. *Johnson* v. *Mississippi*, 486 U. S., at 587. Nor does it negate the fact that that court persists in failing to treat *Caldwell* claims in an evenhanded manner.

Thus, once the adequacy issue is fully considered, there is no escaping the conclusion that the Florida Supreme Court's rejection of respondent's *Caldwell* claim did not rest on an adequate state ground. Yet, in unseemly haste to reverse the Court of Appeals on the issue of "cause," the majority treats the adequacy issue as an afterthought, although it is an analytically antecedent issue.[10]

## III

Even if, somehow, I could be convinced that the Florida Supreme Court's reliance on respondent's procedural default was "adequate," within the meaning of this Court's precedents, I would still conclude that the Court of Appeals properly reached the merits of respondent's *Caldwell* claim. I have no quarrel with the majority's determination that respondent cannot show "cause" for his procedural default.[11]

---

[10] In addition, this Court historically has expressed particular reluctance to give force to a state court's discretionary refusal to consider a capital defendant's meritorious federal constitutional claim for reasons of procedural default. See *Williams* v. *Georgia*, 349 U. S. 375 (1955); *Patterson* v. *Alabama*, 294 U. S. 600 (1935). In holding the state procedural bar adequate here, the majority ignores these longstanding precedents.

[11] I nonetheless digress to note one disturbing aspect of the majority's analysis of the "cause" issue.

The majority broadly asserts: "To establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Ante*, at 407. More pointedly, the majority continues: "Respondent therefore must be asserting in this case that the trial court's remarks violated state law." *Ante*, at 407–408. But contrary to the majority's description of *Caldwell*'s holding, it may be possible to establish a *Caldwell* violation by showing that jury instructions, although accurate under state law, nonetheless minimize the jury's sense of responsibility in the sentencing process. See *Steffen* v. *Ohio*, 485 U. S. 916 (1988) (BRENNAN, J., dissenting from denial of certiorari). The Court need not address this issue here, however, because respondent *is* asserting what the majority contends he "must be asserting": his particular *Caldwell* claim rests on the premise that his jury was given inaccurate information about its role under state law. Brief for Respondent 25–49. Thus, it would suffice to say that respondent lacks "cause" for

"That determination, however, does not end our inquiry." *Smith* v. *Murray*, 477 U. S., at 537.

Rather, as the majority apparently recognizes, we must consider whether the failure to examine the merits of the *Caldwell* claim in this habeas action would result in a fundamental miscarriage of justice. The majority believes that no such injustice would occur. Again, I disagree.

Respondent's *Caldwell* claim, see generally Brief for Respondent 25–49, rests on the following premises: Under Florida law, the judge at his trial was permitted to overturn the jury's judgment on whether he should receive a life or a death sentence only upon a clear and convincing showing that the jury's choice was erroneous.[12] Notwithstanding this rule of Florida law, the trial judge repeatedly and insistently told the jurors that their sentencing vote was "strictly a recommendation and nothing more," that he was "not bound to follow that recommendation," and that he was "the sole determiner on whether or not [respondent] receives life or is put into the electric chair." App. 28, 69, 78, 79. Furthermore, the judge drummed this misinformation into the jurors' heads by repeatedly telling them that "the most important thing . . . to remember" was the nonbinding nature of their recommendation and that the capital sentencing decision was not on their "conscience" but on his. *Id.*, at 69–70, 77–78.

If (as the Court of Appeals held and we must assume) these repeated and insistent comments mischaracterized the jury's role under state law, then the sentencing process in respondent's case was so distorted as to render the sentence inherently suspect. The alleged error in this case was severe: the incorrect instructions may well have caused the jury to vote for a death sentence that it would not have returned had it been accurately instructed. See *Caldwell* v. *Mississippi*,

---

his procedural default because under his own theory of his *Caldwell* claim the objectionable instructions were erroneous under state law.

[12] See *Harich* v. *Dugger*, 844 F. 2d, at 1473; see also *Mann* v. *Dugger*, 844 F. 2d 1446, 1450–1455 (CA11 1988) (en banc), cert. pending, No. 87–2073.

472 U. S., at 331–333. Jurors who erroneously believe that responsibility for the defendant's death lies on someone else's conscience may be more willing to vote for death "to 'send a message' of extreme disapproval for the defendant's acts." *Id.*, at 331. Thus, it is plain that respondent has presented a "substantial claim that the alleged error undermined the accuracy of the . . . sentencing determination" at his trial. *Smith* v. *Murray*, 477 U. S., at 539. Indeed, the very essence of a *Caldwell* claim is that the accuracy of the sentencing determination has been unconstitutionally undermined.

In this respect, the alleged sentencing error here is entirely unlike the one at issue in *Smith* itself. There, admission of particular testimony allegedly violated the Fifth and Eighth Amendments,[13] and the question was whether its admission "pervert[ed] the jury's deliberations" on issues relevant to its capital sentencing determination. 477 U. S., at 538. This case, in contrast, does not concern the inclusion or exclusion of particular evidence, but does concern a detailed and repeated explanation of the jury's responsibility, or lack of it, in the sentencing process. The alleged error thus is global in scope: it necessarily pervades the entire sentencing process. Indeed, the alleged error in this case, if true, could not help but pervert the sentencing decision.[14] Conse-

---

[13] The testimony at issue in *Smith* was that of the defendant's court-appointed psychiatrist: during the psychiatric evaluation, the defendant discussed a prior incident of deviant sexual conduct on his part. At the sentencing phase of the trial, the prosecution called the psychiatrist to the stand and elicited a description of what the defendant had said.

[14] As even the majority appears to recognize, *ante*, at 410–412, n. 6, the trial judge's finding of an equal number of aggravating and mitigating circumstances lends further support to respondent's contention that review of his *Caldwell* claim is necessary to avoid a fundamental miscarriage of justice. The equal number of aggravating and mitigating circumstances suggests that the sentencing decision was a close call—as does the fact that two justices of the Florida Supreme Court dissented on respondent's direct appeal. See *Adams* v. *State*, 412 So. 2d 850, 857 (1982). Under these circumstances, it is all the more likely that egregiously misinforming the jury of its role in the process affected the result.

quently, respondent's *Caldwell* claim must fall within the scope of the "fundamental miscarriage of justice" exception to the *Sykes* "cause" and "prejudice" test, unless the Court today means to repudiate *sub silentio* its opinion in *Smith*.

In other words, respondent's *Caldwell* claim is precisely the kind of claim that remains reviewable in a federal habeas action even though respondent cannot establish cause for his procedural default. See *Smith*, 477 U. S., at 537–539. In holding otherwise, the Court sends respondent to an execution that not only is presumptively unlawful, but is presumptively inaccurate as well. See *Caldwell*, 472 U. S., at 331. Nothing in the habeas corpus precedents of this Court calls for this consummately capricious result.[15]

---

[15] The majority "do[es] not undertake here to define what it means to be 'actually innocent' of a death sentence," *ante*, at 412, n. 6, yet apparently concludes that respondent cannot show that he "probably is 'actually innocent' of the sentence he . . . received." *Ibid.* This incoherence in the Court's decisionmaking would be disturbing in any case, but is especially shocking in a capital case. Moreover, the majority "recognize[s] the difficulty" of applying the concept of " 'actual' innocence" to sentencing determinations, *ibid.*, yet persists in using that problematic term without any clarification of its meaning in the sentencing context. *Ibid.*

What is worse, the Court in *Smith* v. *Murray* did articulate a standard, and yet the Court today ignores it. I was not in the majority in *Smith*, but here I have attempted faithfully to apply the standard articulated by the *Smith* majority, as best as I can discern it: whether the prisoner has demonstrated a "substantial claim that the alleged error undermined the accuracy of the guilt or sentencing determination." 477 U. S., at 539; see also *Harris* v. *Reed, ante*, at 268 (O'CONNOR, J., concurring) (quoting the relevant language from *Smith*). The majority today refuses to apply this standard because it is evident that respondent must prevail under it. The "alleged error" here—telling the jurors that the death sentence was not on their consciences, when under Florida law their sentencing determination was binding unless clearly erroneous—is such that respondent undoubtedly has presented a "substantial claim" that this error "undermined the accuracy" of his sentence, especially given the equal number of aggravating and mitigating circumstances in his case. See n. 13, *supra*.

By refusing to apply this standard, the Court today effectively discards its own opinion in *Smith*. Yet, in also refusing to define "actual innocence"

## IV

Contrary to the result reached by the majority today, our precedents amply support the Court of Appeals' decision to consider whether respondent's death sentence was unconstitutionally unreliable despite respondent's failure to raise this constitutional issue in accordance with state procedures. It is not surprising, I suppose, that the Court misses the force of these precedents, since it confines two-thirds of the relevant inquiry to a single footnote at the end of its opinion.

If the Court can reach the question of "cause," on which certiorari was granted, only by making a mockery of the requirement that state procedural bar rules be "appl[ied] even-handedly to all similar claims," *Hathorn* v. *Lovorn*, 457 U. S., at 263, then the Court should dismiss the writ of certiorari as improvidently granted. Similarly, if the Court does not wish to undertake the task of applying the "fundamental miscarriage of justice" inquiry, then it should remand the case to the Court of Appeals for that purpose. But inasmuch as the Court has chosen to decide these issues, the conclusory treatment they receive does not suffice to discharge the Court's responsibilities to respondent, for whom these issues are a matter of life or death. Indeed, I would have expected that when this Court reinstates a death sentence vacated by the judgment below (and does so purely for procedural reasons), it would be particularly careful to consider fully all issues necessary to its disposition of the case. To judge by footnote 6 of the Court's opinion, this expectation was naive.

I dissent.

---

in the sentencing context, the Court offers nothing in its place. In this way, the Court both leaves the law in a shambles and reinstates respondent's death sentence without ever bothering to determine what legal principle actually governs his case.