442 So.2d 185 (1983)
Larry Joe JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 58713.
Supreme Court of Florida.
November 17, 1983.
Rehearing Denied January 16, 1984.
*186 Milo I. Thomas, Jr., Public Defender, Third Judicial Circuit, Lake City, and Michael J. Minerva and Clifford L. Davis, Sp. Asst. Public Defenders, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Gregory C. Smith, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of conviction of a capital felony for which a sentence of death was imposed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Larry Joe Johnson was convicted of first-degree murder and armed robbery. At the trial Patty Burks testified that on March 16, 1979, she and Johnson stopped at a service station along Interstate Highway 10 in Madison County. She said that Johnson aimed a sawed-off shotgun at the proprietor while she took money from the cash register. She testified that after she left the building, Johnson shot the proprietor. They drove on to Kentucky where Burks, through her mother, informed the police of the murder. The police arrested Johnson for violating probation and later turned him over to Florida authorities. Found in his car were a sawed-off shotgun and number five shot shells, the same type of shot found in the victim's body.
In accordance with the jury's recommendation, the trial judge imposed a sentence of death for the offense of first-degree murder. Johnson was sentenced to life imprisonment for the offense of armed robbery. In this appeal, Johnson argues that the sheriff should not have been allowed to act as bailiff, that the prosecutor's closing arguments were improper and prejudicial, and that his sentences were improperly imposed. Since we find no reversible error was committed, we affirm.
Johnson's first argument on appeal is that he was denied his fourteenth amendment due process right to be tried by an impartial jury. This argument is based on the assertion that the county sheriff, who had participated in the investigation of the crimes and assisted counsel in the selection of the jury, acted as bailiff during the trial. Johnson points out that in Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the United States Supreme Court held that it was a violation of due process to allow two deputies who were material witnesses for the state to act *187 as custodians of the jury even though there was no proof of improper communication between them and the jury. The Court concluded that since the credibility of the witnesses was a deciding factor in the case, the procedure was improper and prejudice was inherent in the continual association of the witnesses with the jury. Johnson argues by analogy that prejudice is also inherent in the present situation where the sheriff helped the prosecution select the jury and then acted as bailiff.
Long before Turner was decided this Court held that prejudice would be presumed where a material witness for the prosecution was allowed to act as bailiff. See Owens v. State, 68 Fla. 154, 67 So. 39 (1914). However, the Court has never extended this holding to cases where the bailiff's testimony was not material to the case. See Rhone v. State, 93 So.2d 80 (Fla. 1957); Moseley v. State, 60 So.2d 167 (Fla. 1952). Thus we are not aligned with those jurisdictions that hold that the mere association of the bailiff with the prosecution is sufficient cause to reverse a conviction. See 4 C. Torcia, Wharton's Criminal Procedure § 563 (12th ed. 1976); Annot., 38 A.L.R.3d 1012 (1971).
Different considerations apply when the bailiff has helped in the investigation and in the selection of the jury than apply when the bailiff is a material witness. In Turner the Supreme Court emphasized that the credibility of the witnesses was enhanced by their continued association with the sequestered jurors during the trial. Because of the witnesses' continual and close association with the jury, the Court found that their credibility in the eyes of the jury was affected by factors taking place outside of the courtroom. In this case the sheriff did not testify so his credibility was not an issue. Therefore we are not faced with the issue of whether the jury may have been influenced by extraneous factors in assessing the credibility of a witness.
In Smith v. State, 251 Miss. 241, 169 So.2d 451 (1964), while the jury was being empanelled and tendered to the state, the district attorney motioned for the sheriff and his deputies to retire with him to pass upon the jury. This was done in the presence of the jury. Over the defendant's objections, the trial court later appointed two of the deputies as bailiffs. The Mississippi Supreme Court reversed the conviction on the ground that an appearance of impropriety might weaken the public's confidence in the judiciary.
We agree with the basic tenet in Smith that it is not good practice for the bailiff to help select the jury. However, we disagree with the conclusion that such a practice is so inherently prejudicial as to require reversal of a conviction. Unlike the situation where the bailiff testifies and his credibility is affected by his close and continual association with the jury, for the bailiff to assist in the selection of the jury does not necessarily have a direct bearing on any issue to be determined by the jury. Therefore prejudice cannot be inferred but must rather be proven.
Johnson has failed to show how he has been prejudiced in this case. The record shows that it is not unusual for the sheriff to assist the state attorney in selecting a jury. Because of the small size of Madison County, the sheriff's staff is not very large so the sheriff himself often acts as the bailiff. He is not allowed to do so when he is a witness. The sheriff testified that during voir dire he did carry on whispered conversations with the state attorney. He said these conversations took place about fifteen feet behind and to the right of the jury box and were outside of the prospective jurors' hearing. He said that he had not and would not discuss the case with any members of the jury. The court found no improprieties had been committed. We therefore find that Johnson was not denied his right of due process under the fourteenth amendment to be tried by an impartial jury.
Appellant argues that on three separate occasions during the closing arguments of the penalty phase of the trial, the prosecutor made improper comments. We will not consider two of those occasions *188 since appellant failed to object. Clark v. State, 363 So.2d 331 (Fla. 1978). As for the third occasion, the prosecutor argued as follows:
You have heard some evidence presented by the defense here designed to tug at your heart strings, to show you that the defendant was a living, breathing, human being with feelings possessed by an ordinary person. You have become acquainted with his family here today. Another family, perhaps you haven't become closely associated with, that is the [victim's] family, will be facing this holiday season one short.
Defense counsel immediately objected and requested a bench conference. At the bench defense counsel requested that the jury be instructed to disregard the comment and moved for a mistrial. The trial court sustained the objection but denied the motion for mistrial. The trial court also found that it would be inappropriate to say anything further to the jury since the comment was not prejudicial.
Appellant is correct in contending that during closing arguments a prosecuting attorney should not attempt to elicit the jury's sympathy by referring to the victim's family. Grant v. State, 171 So.2d 361 (Fla. 1965), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966); Pait v. State, 112 So.2d 380 (Fla. 1959). Although this Court reversed the defendants' convictions in the two cited cases, the same result is not required in this case. In both cases the references to the families of the victims were but small parts of closing arguments the whole tenor of which were improperly emotional and prejudicial. In this case, there was a single comment made at the sentencing portion of the trial in response to the testimony of the defendant's relatives in his behalf. Although improper, the comment was not so prejudicial as to have influenced the jury to render a more severe recommendation than it would have otherwise and is therefore not reversible error. See Darden v. State, 329 So.2d 287 (Fla. 1976), cert. dismissed, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977).
After the penalty phase of the trial, the jury recommended the death penalty. The trial judge adopted this recommendation, finding three aggravating circumstances: that appellant had previously been convicted of a felony involving violence and was under sentence of imprisonment; that the murder was committed during the commission of a felony and for pecuniary gain; and that the murder was committed to avoid arrest and to hinder law enforcement. The judge found no mitigating circumstances.
Appellant first challenges the imposition of the death sentence by asserting that the jury was improperly influenced by various reasons, some of which we have already discussed. Since none of the reasons mentioned establish any improper prejudice, we find that the jury was not improperly influenced in reaching its recommendation.
Next appellant argues that the court erred in finding as an aggravating circumstance that the murder was committed to avoid arrest and to hinder law enforcement. This finding was based on the testimony of Patty Burks who said that appellant explained he killed the proprietor because "dead witnesses don't talk." Appellant argues that Ms. Burks' testimony was not credible because she was only seventeen and a participant in the crime. The credibility of a witness is for the finder of fact, not an appellate court, to determine. The testimony to appellant's admission is sufficient proof that he committed the murder to eliminate a witness to the robbery. This evidence supports the trial judge's finding that the murder was committed for the purpose of avoiding arrest or hindering law enforcement. Knight v. State, 338 So.2d 201 (Fla. 1976); Meeks v. State, 339 So.2d 186 (Fla. 1976), cert. denied, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).
Appellant also contends that the court erred in not finding as a mitigating circumstance that appellant had no significant history of prior criminal activity. The judge refused to find this as a mitigating circumstance because appellant had been *189 previously convicted of assault for shooting his wife. Appellant claims that a single conviction does not constitute a significant history of prior criminal activity. We disagree. In determining what is significant criminal activity, the trial judge may consider the severity as well as the number of prior offenses. See State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We have upheld holdings that this mitigating circumstance does not apply when a defendant has been previously convicted of a single serious offense such as murder, Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), or breaking and entering, Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). We therefore hold that the trial judge was correct in not finding this as a mitigating circumstance.
Appellant also argues that the trial judge erred in not finding his emotional and mental state to be a mitigating circumstance under subsections 921.141(6)(b), (e), and (f), Florida Statutes (1977). With respect to these mitigating circumstances, the trial court found:
Defendant was able to appreciate the criminality of his conduct and that there is no basis for concluding that the capacity of the Defendant to conform his conduct to the requirements of law was substantially impaired. There was some conflicting testimony on this point. The Defendant was examined by two psychiatrists and two clinical psychologists. All of the evidence from the experts indicated that the Defendant was able to distinguish that which is "right" from that which is "wrong" and that he was legally sane at all material times. However, the testimony from one clinical psychologist, Dr. Charles R. Figley, advanced the theory that the Defendant, at the time he actually pulled the trigger, did so from impulsive behavior which had a direct causal relationship to his experience in Vietnam. This particular witness had written a book consistent with this theory, but readily admitted that he was one of the few people who have done any work in this area. The theory or opinion was to some extent also supported by the testimony of another clinical psychologist, Dr. McMahon. Her opinion suggested that the Defendant suffered from organic brain damage and that he was of border-line intelligence. The testimony of the two clinical psychologists was disputed by the two psychiatrists. Taken as a whole, together with the Court's own observations of the Defendant during the trial, as well as his testimony in pretrial proceedings, this Court concludes that there were no mental or psychological factors sufficiently significant to support a conclusion as to any mitigating circumstance. The evidence clearly showed that the Defendant planned the robbery of the service station, executed the plan, and killed the service station operator because "dead witnesses don't talk." The State introduced into evidence the shotgun with which the Defendant killed the service station operator. The shotgun was owned by the Defendant for a substantial period of time prior to the homicide and was found in his possession two days after the homicide was committed. A visual examination of the shotgun plainly shows that the barrel had been sawed off and the stock had been replaced with a pistol grip. Such a shotgun had only one practical purpose  the use for which it was in fact made. This leads the Court in part to the conclusion that the Defendant fully appreciated the criminality of his conduct and had no intention of conforming his conduct to the requirements of law. It further supports this Court's conclusion that the Defendant was not acting under extreme duress or under the substantial domination of another person.
It was within the trial judge's province to grant the two psychologists' testimony little or no weight. Lucas v. State, 376 So.2d 1149 (Fla. 1979). We therefore find that the trial judge did not err in rejecting appellant's contention that these mitigating circumstances applied.
*190 Appellant takes issue with the fact that the trial judge in finding that these mitigating circumstances did not apply took into account his "own observations of the Defendant during the trial, as well as his testimony in pretrial proceedings." Appellant argues that the trial court's use of personal observations without warning and without an opportunity for rebuttal violated his fundamental right of due process. Appellant compares this procedure to that of a trial judge's considering a presentence investigation report without the defendant's knowledge, which procedure was disapproved in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The analogy is not appropriate. Whereas a defendant may not know what information is contained in a presentence investigation report he must know how he is behaving in the courtroom. In this situation the judge is not relying on information that is not available to the defendant. Although justice should be blind, judges are not. They may properly notice a defendant's behavior and draw inferences concerning matters such as whether the defendant is capable of appreciating the criminality of his conduct. It would help if a judge who relies on his personal observations would describe them in detail in order to give a reviewing court a basis for deciding whether his conclusions are correct. However, in this case the trial judge gave sufficient reasons to support his conclusions independent of the personal observations, so we find no error.
Finally, appellant argues that he should not have been sentenced separately for the crime of armed robbery on the ground that it was a lesser included offense of felony-murder. See State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). Since we have already concurred with the court's finding that appellant committed this homicide for the purpose of eliminating a witness, there is sufficient proof of premeditation. Therefore, the armed robbery was not a lesser included offense and Hegstrom does not apply.
We conclude there is competent substantial evidence supporting the trial judge's findings with respect to the aggravating circumstances. Apparently in attempt to comply with the reasoning in Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), the trial judge found as a single aggravating circumstance that appellant had previously been convicted of a felony involving violence and was under sentence of imprisonment. This finding was based on the fact that appellant was still under sentence for having committed a second-degree assault in Kentucky. We note that there was no need to treat these separate statutory aggravating circumstances as a single aggravating circumstance because they are "two separate and distinct characteristics of the defendant, not based on the same evidence and the same essential facts." Waterhouse v. State, 429 So.2d 301, 307 (Fla. 1983). The trial judge did, however, correctly apply Provence in finding as a single aggravating circumstance that the murder was committed during the commission of a robbery and was committed for pecuniary gain. The judge also correctly applied the reasoning of Provence in finding as a single aggravating circumstance that the murder was committed to avoid or prevent a lawful arrest and was committed to disrupt or hinder the enforcement of the law. See Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982).
Having found no reversible error we affirm appellant's convictions for first-degree murder and armed robbery and his respective sentences of death and life imprisonment.
It is so ordered.
ALDERMAN, C.J., and ADKINS and BOYD, JJ., concur.
EHRLICH, J., concurs specially with an opinion.
*191 McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
EHRLICH, Judge, specially concurring.
I am of the opinion that if the sheriff or one of his deputies participates in the trial by counseling with the prosecutor during the selection of the jury or during the course of the trial, he should not be the bailiff. By assisting the prosecutor, he is identified in the eyes of the jury as a member of the prosecutor's team. The bailiff on the other hand, should have an absolutely neutral role in the trial proceedings. He makes certain that the jury's seclusion is not disturbed except by direction of the Court. He ministers to the jury's needs. He's the one person who can, and of necessity does, communicate with the jury during the course of the trial as the need may arise. The lawyers are prohibited from talking to or otherwise fraternizing with the jury, and the jury is generally advised of this fact so that they will understand why counsel, who may be known to them, are treating them as pariahs. But not so the bailiff. If the jury members have a need, they turn to the bailiff. The role of the neutral bailiff and the role of one who is in effect on the prosecutor's team are mutually exclusive. The roles don't mix.
In the case at hand, the sheriff did counsel with the state attorney within view of the jury. Because of personnel problems, the sheriff acted as the bailiff also. This may not be uncommon in small rural counties. While no improprieties may actually take place, and there is no intimation in this record that any did, this dual role does carry the appearance and the potential of impropriety.
I think that if the state attorney needs the sheriff or his deputy's assistance during the trial, that someone else should serve as bailiff. To do otherwise may very well jeopardize the state's case.
While I disapprove of and recommend against the sheriff's dual role employed in the trial of this case, nonetheless I concur in the judgment of conviction and the sentence and the opinion of the Court because I find no evidence of actual impropriety and no demonstrable harm to the defendant.
McDONALD, Judge, concurring in part and dissenting in part.
Sheriff Peavy acted as investigator of the crime, confidant to the prosecutor when the jury was selected, and then custodian of the jury. These services are incompatible with each other and should not be allowed. A close relationship exists between a bailiff and the jury of which he is in charge. The bailiff looks after the jury's welfare, frequently converses with them, and when sequestered for meals is in attendance with them.
I agree with the majority that this happenstance alone does not require a reversal but it alerts this Court that we should unqualifiedly satisfy ourselves that the sheriff's acting as a bailiff affected neither the conviction nor the jury's recommendation on the sentence. The evidence of guilt is overwhelming in this case and I am fully satisfied that even if Sheriff Peavy had inadvertantly communicated with the jury on some of the issues the verdict would be the same. The test of harmless error enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is clearly present in the guilt phase. Less clear is the sentencing phase and the jury's recommendation of death. While Johnson clearly earned several aggravating circumstances, he also presented some mitigating testimony. A sympathetic jury could logically have recommended life. I do not suggest that the sheriff intentionally subjected the jury to the views of the state, but I would be extremely surprised if the jury felt that it would be displeasing him if it recommended death.
This is a sensitive area. The practice here should not be encouraged. Because of that I vote to grant a new sentencing hearing. I would affirm the conviction.
OVERTON, J., concurs.