CLARK, Circuit Judge:
 

 Petitioner appeals the district court’s denial of the writ of habeas corpus. Because the district court properly dismissed petitioner’s claims as an abuse of the writ, we affirm.
 

 I.
 

 This court’s decision following petitioner’s first habeas petition sets forth the facts of the underlying crime (the murder of a convenience store clerk), the trial and sentencing proceedings in state court, and the procedural history of the case.
 
 [1]
 
 Following our affirmance of the district court’s first denial of habeas relief, a second death warrant was signed on January 29, 1988. Before the warrant was denied
 
 *1358
 
 on February 24, 1988, Johnson petitioned the Florida Supreme Court for relief pursuant to
 
 Hitchcock v.
 
 Dugger,
 
 [2]
 
 claiming that the court that sentenced him to death was precluded from considering nonstatutory mitigating evidence. The Florida Supreme Court denied relief, holding that because the jury was instructed to consider any mitigating evidence, no
 
 Hitchcock
 
 instruction had been given.
 
 [3]
 
 On March 3, 1988, Johnson also filed a Rule 3.850 petition, which was summarily denied. On appeal, relief was denied on all counts as procedurally barred,
 
 [4]
 
 and petitioner filed the instant habeas corpus petition.
 

 Petitioner, in his second habeas petition, raised six claims before the district court: first, that the trial judge erroneously limited his consideration at sentencing to statutory mitigating evidence, thereby contravening the rule in
 
 Hitchcock;
 
 second, that certain remarks by the prosecutor during closing argument at the sentencing phase were improper, in violation of
 
 Booth v.
 
 Maryland;
 
 [5]
 
 third, that the sheriffs role as bailiff during the trial prejudiced petitioner; fourth, that remarks by the prosecutor and sentencing judge improperly diminished the role of the jury in sentencing, in contravention of
 
 Caldwell v. Mississipp
 
 i,
 
 [6]
 
 fifth, that the court at sentencing failed to find mitigating circumstances based on the evidence presented; and finally, that petitioner’s death sentence was unconstitutionally predicated on automatic, statutory aggravating circumstances in violation of
 
 Sumner v.
 
 Shuman
 
 [7]
 
 and
 
 Lowenfield v.
 
 Phelps.
 
 [8]
 
 The district court, following entry of a stay of execution, denied relief on all counts and found an abuse of the writ. We review each of these claims below.
 

 II.
 

 A.
 
 Hitchcock Instruction.
 

 Petitioner first raised the issue of the trial judge’s failure to consider nonstat-utory mitigating evidence in his first federal habeas petition, prior to the Supreme Court’s decision in
 
 Hitchcock v. Dugger.
 
 Because
 
 Hitchcock
 
 represents a significant change in the law, petitioner’s claim is not procedurally barred.
 
 [9]
 

 This court, in its pre-Hitchcock consideration of petitioner’s claim, concluded that “the sentencing order read in its entirety, combined with the court’s instructions to the jury, indicates that the trial court gave adequate consideration to the evidence presented.”
 
 [10]
 
 And while our determination of petitioner’s challenge to consideration of mitigating evidence was under the standard set forth by the Supreme Court in
 
 Eddings v.
 
 Oklahoma
 
 [11]
 
 and
 
 Lockett v. Ohio,
 

 [12]
 

 Hitchcock
 
 does not change the outcome here. As the district court explained, the jury was instructed that they were to consider evidence of mitigating circumstances “including but not limited to” the statutory circumstances. The Florida Supreme Court explicitly held that the sentencing judge properly instructed the jury under
 
 Hitchcock
 
 and Lockett.
 
 [13]
 
 Moreover, in his sentencing order, the judge referred to nonstatutory mitigating evidence concerning petitioner’s mental incapacity and its possible link to his Vietnam
 
 *1359
 
 service.
 
 [14]
 
 Contrary to petitioner s contention, then, the record at sentencing does not reflect ambiguity regarding consideration given by the judge or jury to nonstat-utory mitigating evidence; nor does the record suggest that less than full and serious consideration was given the nonstat-utory mitigating evidence. Petitioner’s reliance on
 
 Messer v.
 
 Florida
 
 [15]
 
 and
 
 Penry v.
 
 Lynaugh,
 
 [16]
 
 therefore, is misplaced.
 

 Petitioner relies further on
 
 Clemons v.
 
 Mississippi,
 
 [17]
 
 in which the Court held that because the trial judge and state Supreme Court opinions were
 

 virtually silent with respect to the particulars of the allegedly mitigating evidence presented by [the defendant] to the jury, we cannot be sure that the [state] court[s] fully heeded our cases emphasizing the importance of the sentencer’s consideration of a defendant’s mitigating evidence.
 
 [18]
 

 The Court, there, vacated the judgment of the lower court. In Mr. Johnson’s case, the sentencing court was not silent with respect to specific nonstatutory mitigating evidence.
 
 Clemons,
 
 therefore, is inappo-site.
 

 Lockett
 
 now, as then, requires the sen-tencer to consider all offered nonstatutory mitigating evidence. The
 
 Lockett
 
 issue has already been decided by this court,
 
 [19]
 
 and as no
 
 Hitchcock
 
 instruction was given,
 
 Hitchcock
 
 as new law does nothing to change the outcome. Because no
 
 Hitchcock
 
 instruction was given, and because we find that the sentencing court fully considered the nonstatutory mitigating evidence, we see no reason to disturb our prior determination that “the trial judge knew he could, and did, consider any non-statutory mitigating factors introduced by the petitioner.”
 
 [20]
 

 B.
 
 Improper Statements by Prosecutor.
 

 Petitioner argues that he was denied his right to a reliable capital sentencing proceeding when the state urged that he be sentenced on the basis of three impermissible factors, including prosecutorial argument regarding victim impact. This court considered the substance of these statements and the resulting prejudice at length in its first opinion.
 
 [21]
 
 Petitioner, in the district court, conceded that his claim of improper closing argument by the prosecutor was exhausted on direct appeal.
 
 [22]
 
 He argues now that
 
 Booth v.
 
 Maryland
 
 [23]
 
 is new law mandating reconsideration of this issue.
 
 Booth
 
 represents “new law,” if at all, only as to the prosecutor’s statement at sentencing that the victim’s family would be facing the holiday season without him. This court’s determination as to the propriety of the remaining two prosecutorial comments is not affected by the rule set forth in Booth.
 
 [24]
 

 In
 
 Booth,
 
 the Supreme Court held that introduction of a victim impact statement at the sentencing phase of a capital murder trial contained information irrelevant to the sentencing decision and, therefore, violated the Eighth Amendment.
 
 [25]
 
 The Court reasoned that “[a]llowing the jury to rely on a [victim impact statement] could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill.”
 
 [26]
 
 The Court in
 
 Booth
 
 con-
 
 *1360
 
 eluded that introduction of a victim impact statement “creates an impermissible risk that the capital sentencing decision will be made in an arbitrary manner.”
 
 [27]
 

 In his penalty phase closing argument, the prosecutor in Mr. Johnson’s case commented:
 

 You have heard some evidence presented by the defense here designed to tug at your heart strings, to show you that the defendant was a living, breathing human being with feelings possessed by an ordinary person. You have become acquainted with his family here today. Another family, perhaps you haven’t become closely associated with, that is the Hadden family, will be facing this holiday season one short.
 
 [28]
 

 Petitioner’s challenge to the prosecutor’s passing comment is distinguishable from the victim impact evidence presented by the state in Booth.
 
 [29]
 
 Unlike
 
 Booth,
 
 the prose-cutorial comment challenged by Mr. Johnson is not state-sanctioned evidence of victim impact submitted as part of the state’s case; nor does it contain detailed opinions and characterizations of victim impact. Thus, in our previous opinion, we held that, as an element of Johnson’s prosecutorial misconduct claim, this statement was not so unconstitutionally prejudicial as to render the proceeding “fundamentally unfair.”
 
 [30]
 
 Now considered in the context of
 
 Booth,
 
 we likewise conclude that the prosecutor’s statement does not rise to the level of constitutional error condemned by the Court in
 
 Booth.
 
 Because we hold that the prosecutor’s comments did not create a risk that Johnson’s death sentence would be “based on considerations that are ‘constitutionally impermissible or totally irrelevant to the capital sentencing process,’ ”
 
 [31]
 
 we affirm the district court’s denial of habeas relief.
 

 C.
 
 Sheriff as Bailiff.
 

 Petitioner raises numerous challenges regarding Sheriff Peavy’s role in his trial. As summarized by the district court, petitioner asserts that Sheriff Peavy:
 

 1) was biased against him,
 

 2) had information about the petitioner and the offense that the jury did not have,
 

 3) was a major participant in the investigation of the murder,
 

 4) housed the prosecution’s star witness in his home,
 

 
 *1361
 
 5) assisted the prosecution in the selection of the jury, and
 

 6) acted as bailiff and was solely responsible for the jury during the trial.
 
 [32]
 

 Petitioner also contends, as he has previously, that references made by prosecution witnesses to Sheriff Peavy during the trial, in effect, made the sheriff a witness against the petitioner.
 

 This court considered, and rejected, these contentions on petitioner’s first federal habeas petition. There, we noted that the sheriff “never took the witness stand, and there has been no allegation that the jury even knew of his participation in the jury selection process.”
 
 [33]
 
 We conclude, now as then, that “[gjiven that the sheriffs participation in the state’s actual presentation of its case was at most peripheral as far as the jury could tell, petitioner presents no more than a
 
 speculative possibility
 
 that the sheriff’s dual role influenced its deliberations.”
 
 [34]
 
 And, absent some showing of actual impropriety by the sheriff to influence the jury, petitioner cannot rely on
 
 Booth v. Maryland
 
 as “new law” applicable to his claim. As the district court reasoned:
 

 Booth
 
 has no application to petitioner’s claim. In
 
 Booth,
 
 the Court held that a Victim Impact Statement introduced during the sentencing phase of a capital murder trial violated the Eighth Amendment. The
 
 Booth
 
 Court found that the Victim Impact Statement contained information irrelevant to the sentencing decision and the risk that the jury may have relied on that information required that the petitioner be resentenced. However, in
 
 Booth
 
 the jury had the improper evidence before it in making its sentencing determination. Here, there is no suggestion of any improper conduct by the sheriff
 
 which might have influenced the jury. Booth
 
 has no effect on this Court’s prior determination.
 
 [35]
 

 Petitioner also argues that new facts, unavailable to Mr. Johnson on direct appeal and in the prior proceedings, have been discovered and counsel reconsideration on the question whether “actual prejudice” has been shown.
 
 [36]
 
 These facts, petitioner concludes, establish the extent of the sheriff’s bias toward .Mr. Johnson and provide what this Court found lacking in 1985 —they show “actual prejudice” in that the sheriff was far from the neutral and detached officer of the court his role as bailiff required.
 

 The district court, after reviewing this “new” evidence, concluded that, even considering the newly discovered “facts,” petitioner did not establish any actual impropriety on the part of Sheriff Peavy. We agree. Petitioner has offered no new evidence to suggest that the sheriff’s participation in the state’s presentation of its case or his contact with the jury, as we had previously concluded, was more than minimal. Thus, under the standard set forth by the Court in
 
 Gonzales v. Beto,
 

 [37]
 

 some showing of actual prejudice is required.
 
 [38]
 

 
 *1362
 
 The central issue with respect to actual prejudice is whether the actions of the sheriff through his responsibilities as bailiff have undermined the impartiality of the jury.
 
 [39]
 
 Applying this standard, petitioner has failed to explain how the actions of the sheriff adversely and tangibly affected the reliability of the outcome of the state court proceedings. Thus, for example, there is no suggestion that Sheriff Peavy ever spoke to the jurors about Mr. Johnson’s case outside the courtroom.
 
 [40]
 
 As we concluded in our earlier opinion, petitioner, again, has made no showing of “actual prejudice” sufficient to overcome the procedural bar.
 
 [41]
 

 Finally, petitioner argues that this court, in its earlier opinion, failed to address whether an evidentiary hearing was appropriate so that the relevant facts concerning the prejudice could be assessed. An evidentiary hearing is not required unless the petitioner alleges facts that, if proved, entitle him to relief.
 
 [42]
 
 Because the district court properly concluded that, accepting the facts argued as true, no actual impropriety on the part of the sheriff had been shown, no evidentiary hearing was required.
 

 Petitioner has failed to establish that “new law” justifies renewal of his claim or that newly discovered evidence bears on his contention that Sheriff Peavy’s role in the trial resulted in a due process violation. We, therefore, hold that the district court properly dismissed petitioner’s claim as an abuse of the writ.
 

 D.
 
 Caldwell Claim.
 

 After oral argument but before final disposition of the appeal of Johnson’s first habeas petition, the Supreme Court issued its decision in
 
 Caldwell v. Mississipp
 
 i.
 
 [43]
 
 There, the Court held that “it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant’s death rests elsewhere.”
 
 [44]
 
 Petitioner, in reliance on
 
 Caldwell,
 
 claims that his sentencing jury was misled as to the importance of its responsibility in recommending Johnson’s sentence.
 
 [45]
 

 The district court correctly determined that under the Supreme Court’s decision in
 
 Dugger v.
 
 Adams,
 
 [46]
 
 Johnson’s
 
 Caldwell
 
 claim was procedurally barred. In
 
 Adams,
 
 as here, despite the availability of a
 
 Caldwell-tyge
 
 claim under state law, respondent did not object to the jury instruction at trial or on direct appeal. The Supreme Court held that because Adams, prior to the Court’s decision in
 
 Caldwell,
 
 could have challenged the jury instruction as misinforming the jury regarding their sentencing responsibility, he could not subsequently rely on
 
 Caldwell
 
 to attack the jury instruction in later state proceedings.
 
 [47]
 
 The determinative factor, the Court reasoned, was that “the ground for challenging the trial judge’s instructions-that they wereP objectionable under state law-was a necessary element of the subsequently available
 
 Caldwell
 
 claim. In such a case, the subsequently available federal claim does
 
 *1363
 
 not excuse the procedural default.”
 
 [48]
 

 Dugger v. Adams
 
 requires the same outcome here. Johnson raised his
 
 Cald
 
 well-type claim for the first time, not at trial or on direct review, but in a state post-conviction Rule 3.850 motion, in which he argued that “the instructions and argument given to the jury at sentencing tended to denigrate its role and the importance of its function.”
 
 [49]
 
 The state court found the claim to be procedurally barred for failure to raise the claim on direct appeal and alternatively determined the claim to be without merit. The Florida Supreme Court affirmed the finding of procedural default, concluding that Johnson’s claim “should have been and, if properly protested and preserved for appeal, could have been raised by the initial appeal and therefore [is] not [a] proper ground for relief by motion to vacate under rule 3.850.”
 
 [50]
 
 The Court’s decision in
 
 Dugger v. Adams
 
 confirms that
 
 Caldwell
 
 does not provide sufficient “cause” for petitioner’s failure to raise his claim at trial or on direct appeal. Under these circumstances, the district court properly found that Johnson’s failure to object or preserve the violation of state law as an issue for appeal bars the petitioner from raising the issue at this late date.
 

 Also, under the Supreme Court’s recent decision in
 
 Sawyer v.
 
 Smith,
 
 [51]
 
 petitioner cannot state a “new law” claim based on
 
 Caldwell
 
 as an intervening change in the law
 
 [52]
 
 occurring between the filing of his first and subsequent federal habeas petitions. Under the nonretroactivity rule of
 
 Teague v.
 
 Lane,
 
 [53]
 
 the Court in
 
 Sawyer
 
 determined that
 
 Caldwell
 
 does not apply retroactively. The Court held that a prisoner whose conviction became final before the “new rule” in
 
 Caldwell
 
 was announced could not rely on
 
 Caldwell
 
 to challenge his capital sentence in a federal habe-as corpus action. The Court, there, reasoned that
 
 Caldwell
 
 was a “new rule” for purposes of
 
 Teague,
 
 because “[examination of ... Eighth Amendment authorities that preceded
 
 Caldwell
 
 shows that it was not dictated by prior precedent existing at the time the defendant’s conviction became final.”
 
 [54]
 
 However, because
 
 Caldwell
 
 was “added to an existing guarantee of due process protection against fundamental unfairness,” the Court was unwilling to find that the rule was an “ ‘absolute prerequisite to fundamental fairness,’ ... of the type that may come within
 
 Teague’s
 
 second exception.”
 
 [55]
 

 Caldwell,
 
 thus, was not a “watershed rule of criminal procedure” necessary to ensure fundamental fairness.
 
 [56]
 

 Sawyer,
 
 therefore, dictates that petitioner cannot ground his claim on the nonretroactive new rule announced in
 
 Caldwell.
 

 E.
 
 Failure to Consider Nonstatutory Mitigating Factors.
 

 Petitioner relies on
 
 Magwood v.
 
 Smith
 
 [57]
 
 as new law to argue, as he did in his first habeas petition, that he was denied a meaningful sentencing hearing through the trial judge’s failure to find mitigating factors clearly set out in the record. In
 
 Magwood,
 
 this court held that “a federal habeas court may review a state court factual finding concerning the
 
 existence
 
 of
 
 *1364
 
 mitigating circumstances_”
 
 [58]
 
 However,
 
 Magwood
 
 reaffirms the principle that “a federal habeas corpus court will not re-evaluate the
 
 weight
 
 accorded to particular aggravating and mitigating factors.”
 
 [59]
 

 Because
 
 Magwood
 
 goes only to federal court review regarding the
 
 existence
 
 of mitigating factors, it does not affect the result in our prior opinion. There, we stated that
 

 [w]here the issue is one of fact ..., we accept the state courts’ decision about the
 
 weight
 
 of mitigating evidence absent fundamental error. No such error has been shown on this record. Indeed, the state introduced substantial testimony by two psychiatrists rebutting the defense’s claim that Johnson suffered from PTSD.
 
 [60]
 

 The Florida Supreme Court, after reviewing the findings of the trial court regarding petitioner’s presentation of psychological evidence, reasoned that “[i]t was within the trial judge’s province to grant the two psychologists’ testimony little or no weight.”
 
 [61]
 
 Thus, the trial court considered, and rejected, evidence of Johnson’s emotional and mental state as mitigating evidence. The district court correctly determined that the trial judge’s findings were fairly supported by the record.
 

 F.
 
 Automatic, Statutory Aggravating Circumstance.
 

 Petitioner was charged with premeditated murder and felony murder. The jury was charged on both counts and returned a general verdict. Johnson argues that imposition of the death penalty in his case was predicated upon an automatic finding of a statutory aggravating circumstance-the felony murder that formed the basis of his conviction-and, as such, violates the Eighth and Fourteenth Amendments.
 

 Petitioner raised this claim on direct appeal,
 
 [62]
 
 but not in his first habeas petition. He now argues that new law,
 
 Sumner v.
 
 Shuman
 
 [63]
 
 and
 
 Lowenfield v.
 
 Phelps,
 
 [64]
 
 makes this claim appropriate for consideration in a second petition.
 

 In
 
 Shuman,
 
 the Court held that a state statute imposing a mandatory death sentence for a prison inmate convicted of murder while serving a life sentence without possibility of parole violates the Eighth and Fourteenth Amendments.
 
 [65]
 
 Proof of a mandatory, aggravating circumstance, the Court held, “do[es] not provide an adequate basis on which to determine whether the death sentence is the appropriate sanction in any particular case.”
 
 [66]
 
 The Court noted, further, that “[t]he Nevada mandatory capital-sentencing statute under which Shu-man was sentenced to death precluded a determination whether any relevant mitigating circumstances justified imposing on him a sentence less than death.”
 
 [67]
 

 In the instant case, the death penalty for felony murder as a statutory aggravating factor was not mandatory. The jury, pursuant to the individualized sentencing procedure, was free to consider any mitigating evidence and to recommend a life sentence.
 
 Shuman,
 
 therefore, does not apply to revive petitioner’s claim.
 

 Neither does the Court’s decision in
 
 Lowenfield v. Phelps
 
 provide support for petitioner’s argument that Florida law, by permitting his conviction and his death sentence to be predicated on a single finding of felony murder, denied him constitutionally adequate sentencing safeguards. The principle animating the Court's deci
 
 *1365
 
 sion in
 
 Lowenfield,
 
 was that “[t]o pass constitutional muster, a capital sentencing scheme must ‘genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.’ ”
 
 [68]
 
 The Court explained that
 

 the narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern,
 
 or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.
 

 [69]
 

 In Florida, the legislature has defined capital offenses broadly, authorizing the imposition of the death penalty on those convicted of first-degree murder.
 
 [70]
 
 The narrowing under Florida law occurs at the sentencing phase, at which time the jury is required to find at least one aggravating circumstance before recommending a sentence of death.
 
 [71]
 
 “By doing so, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition.”
 
 [72]
 

 Petitioner’s argument that the duplica-tive nature of the statutory aggravating circumstance renders his sentence constitutionally infirm under
 
 Lowenfield
 
 is foreclosed by the Court’s recent decision in
 
 Blystone v.
 
 Pennsylvania.
 
 [73]
 
 In that case,
 

 Petitioner was charged and convicted of first-degree murder, robbery, criminal conspiracy to commit homicide, and criminal conspiracy to commit robbery. The same jury that convicted petitioner found as an aggravating circumstance that petitioner “committed a killing while in the perpetration of a felony.” 42 Pa.Cons. Stat. § 9711(d)(6) (1988). The jury found that no mitigating circumstances existed, and accordingly sentenced petitioner to death pursuant to the Pennsylvania death penalty statute which provides that “[t]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.” § 9711(c)(l)(iv).
 
 [74]
 

 The Supreme Court rejected petitioner’s argument that the mandatory imposition of the death in these circumstances violated the Eighth Amendment requirement of individualized sentencing:
 

 The presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury. See
 
 Lowenfield v. Phelps,
 
 484 U.S. 281, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (“The use of ‘aggravating circumstances’ is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury’s discretion.”). The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence.
 
 [75]
 

 The Florida sentencing scheme as applied in Johnson’s case “genuinely narrows the class of persons eligible for the death pen
 
 *1366
 
 alty.”
 
 [76]
 
 The sentencing court’s individualized “consideration of mitigating circumstances and ... exercise of discretion”
 
 [77]
 
 were sufficient to satisfy the requirements of the Eighth and Fourteenth Amendments.
 

 III.
 

 The district court’s denial of the writ of habeas corpus is AFFIRMED.
 

 [1]
 

 .
 
 See Johnson v. Wainwright,
 
 778 F.2d 623 (11th Cir.1985).
 

 [2]
 

 . 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
 

 [3]
 

 .
 
 Johnson
 
 v.
 
 Dugger,
 
 520 So.2d 565 (Fla.1988).
 

 [4]
 

 .
 
 Johnson v. State,
 
 522 So.2d 356 (Fla.1988).
 

 [5]
 

 . 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
 

 [6]
 

 . 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
 

 [7]
 

 . 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987).
 

 [8]
 

 . 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).
 

 [9]
 

 .
 
 Messer v. Florida,
 
 834 F.2d 890, 892-92 (11th Cir.1987).
 

 [10]
 

 .
 
 Johnson v. Wainwright,
 
 778 F.2d at 629.
 

 [11]
 

 . 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
 

 [12]
 

 . 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion).
 

 [13]
 

 .Johnson, 520 So.2d at 566.
 

 [14]
 

 .
 
 See Johnson,
 
 778 F.2d at 629 (quoting district court’s review of trial judges consideration of nonstatutory mitigating evidence).
 

 [15]
 

 . 834 F.2d 890 (11th Cir.1987).
 

 [16]
 

 . 492 U.S. 302, 318-28, 109 S.Ct. 2934, 2947-51, 106 L.Ed.2d 256 (1989).
 

 [17]
 

 . — U.S.-, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
 

 [18]
 

 .
 
 Id.,
 
 110 S.Ct. at 1450.
 

 [19]
 

 .
 
 Johnson,
 
 778 F.2d at 629.
 

 [20]
 

 .
 
 Id.
 

 [21]
 

 .
 
 Johnson,
 
 778 F.2d at 629-30.
 

 [22]
 

 .
 
 See Johnson v. State,
 
 442 So.2d 185 (Fla.1983).
 

 [23]
 

 . 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
 

 [24]
 

 .
 
 See Johnson,
 
 778 F.2d at 630-31.
 

 [25]
 

 . 482 U.S. at 505, 107 S.Ct. at 2534.
 

 [26]
 

 .
 
 Id.,
 
 107 S.Ct. at 2534.
 

 [27]
 

 .
 
 Id.,
 
 107 S.Ct. at 2534.
 

 [28]
 

 . Transcript, at 938.
 

 [29]
 

 . The victim impact statement in
 
 Booth
 
 was described by the district court in
 
 Daugherty v. Dugger:
 

 The victim impact statement presented in
 
 Booth
 
 provided the jury with two types of information: the personal characteristics of the victims and the emotional impact of the crime on their family, and the family members’ opinion and characterizations of the crime. The statement contained family members’ comments emphasizing the victims’ outstanding personal qualities, 107 S.Ct. at 2531 n. 2, the serious emotional problems suffered by family members as a result of the crimes, 107 S.Ct. at 2531, and the family members' perception of the crimes, including the son’s opinion that his parents were "butchered like animals” and that the perpetrators of such crimes should not be able to "get away with it.”
 
 Id.
 
 In holding that such information created a constitutionally unacceptable risk that the jury might impose the death penalty in an arbitrary and capricious manner, the Supreme Court stated that the capital sentencing decision cannot be allowed to turn on whether the victim was "a sterling member of the community rather than someone of questionable character,” or the ability of the family members to articulate their sense of loss. 107 S.Ct. at 2534. The Supreme Court further noted that family members’ opinions and characterizations of the crimes "can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." 107 S.Ct. at 2536.
 

 699 F.Supp. 1517, 1523 (M.D.Fla.1988).
 

 [30]
 

 .
 
 Johnson,
 
 778 F.2d at 630 (quoting
 
 Brooks v. Kemp,
 
 762 F.2d 1383, 1400 (11th Cir.1985).
 

 [31]
 

 .
 
 Id.,
 
 107 S.Ct. at 2533
 
 (quoting Zant v. Stephens,
 
 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983));
 
 see also Bertolotti v. Dugger,
 
 883 F.2d 1503, 1524 n. 19 (11th Cir.1989) (expressing doubt that statement as to victim as "just kind of an abstract” whom everyone has forgotten "rises to the level condemned by the Supreme Court” in
 
 Booth',
 
 holding, nevertheless, that considered as an element of petitioner’s prosecutorial misconduct claim, statement was not unconstitutionally prejudicial).
 

 [32]
 

 . District Court Order, at 4 (April 1, 1988).
 

 [33]
 

 .
 
 Johnson,
 
 778 F.2d at 627.
 

 [34]
 

 .
 
 Id.
 
 (emphasis added).
 

 [35]
 

 . District Court Order, at 5 (April 1, 1988) (emphasis added).
 

 [36]
 

 . Petitioner claims that Madison County Sheriff s Department files reveal that Sheriff Peavey was contacted by Mr. George Hansen of Disabled American Veterans regarding a telephone call from Mr. Johnson’s aunt. The sheriff was informed that Mr. Johnson had not been receiving his prescribed medication for treatment of seizures, anxiety, and depression. Sheriff Peavy responded that Mr. Johnson was "perfectly normal," was “being treated far better than he deserves to be treated," and that “no one is concerned with [the victim's] family or how the victim suffered." Also previously unknown, petitioner argues, were the sheriff's communications with the State of Florida Crime Compensation Commission to obtain remuneration from the state for the victim's family. Finally, petitioner cites the previously undisclosed files of Sheriff Peavy as indicating that the sheriff, having been contacted by the victim’s family, informed the state’s attorney of the family’s concern.
 

 [37]
 

 . 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787 (1972).
 

 [38]
 

 .
 
 Id.
 
 at 1054-55, 92 S.Ct. at 1504.
 

 [39]
 

 .
 
 Turner v. Louisiana,
 
 379 U.S. 466, 471-72, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965).
 

 [40]
 

 .
 
 Cf. Gonzales,
 
 405 U.S. at 1056, 92 S.Ct. at 1505 (no showing of actual prejudice required,
 
 i.e.,
 
 that witness-bailiff spoke to jurors about case outside courtroom, where sheriff acted as bailiff
 
 and
 
 played central role through crucial testimony as key prosecution witness).
 

 [41]
 

 .
 
 Johnson,
 
 778 F.2d at 627.
 

 [42]
 

 .
 
 Townsend v. Sain,
 
 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963);
 
 Porter v. Wainwright,
 
 805 F.2d 930, 933 (11th Cir.1986).
 

 [43]
 

 . 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
 

 [44]
 

 .
 
 Id.
 
 at 328-329, 105 S.Ct. at 2639.
 

 [45]
 

 . Because we hold on other grounds that Johnson’s
 
 Caldwell
 
 claim is procedurally barred, we do not consider the question whether the district court properly concluded that petitioner intentionally abandoned or withheld his
 
 Caldwell
 
 claim on appeal of the denial of his first habeas petition.
 

 [46]
 

 . 489 U.S. 401, 406, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989).
 

 [47]
 

 .
 
 Id.
 
 at 402-13, 109 S.Ct. at 1213-18.
 

 [48]
 

 .
 
 Id.
 
 at 410, 109 S.Ct. at 1217.
 

 [49]
 

 .
 
 Johnson v. Wainwright,
 
 463 So.2d 207, 212 (Fla.1985).
 

 [50]
 

 .
 
 Id.
 
 (citing
 
 Booker v. State,
 
 441 So.2d 148 (Fla.1983);
 
 Thompson v. State,
 
 410 So.2d 500 (Fla.1983)).
 

 [51]
 

 . — U.S. -, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).
 

 [52]
 

 .See Sanders
 
 v.
 
 United States,
 
 373 U.S. 1, 18, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148 (1963);
 
 Tucker v. Kemp,
 
 818 F.2d 749, 752 (11th Cir.1987).
 

 [53]
 

 . 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
 

 [54]
 

 .
 
 Id.,
 
 105 S.Ct. at 2828.
 

 [55]
 

 .
 
 Sawyer,
 
 110 S.Ct. at 2832 (quoting
 
 Teague,
 
 489 U.S. at 314, 109 S.Ct. at 1077).
 

 [56]
 

 .
 
 Saffle v. Parks,
 
 494 U.S. 484, 110 S.Ct. 1257, 1258, 108 L.Ed.2d 415 (1990).
 

 [57]
 

 .791 F.2d 1438 (11th Cir.1986).
 

 [58]
 

 .
 
 Id.
 
 at 1449 (emphasis added).
 

 [59]
 

 .
 
 Id.
 

 [60]
 

 .
 
 Id.
 
 at 631-32 (emphasis added).
 

 [61]
 

 .
 
 Johnson v. State,
 
 442 So.2d 185, 189 (Fla.1983).
 

 [62]
 

 . Id.
 

 [63]
 

 . 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987).
 

 [64]
 

 . 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).
 

 [65]
 

 .
 
 Shuman,
 
 483
 
 U.S.
 
 at 77-82, 107 S.Ct. at 2723-26.
 

 [66]
 

 .
 
 Id.
 
 at 78, 107 S.Ct. at 2724.
 

 [67]
 

 .
 
 Id.
 
 at 78, 107 S.Ct. at 2723-24.
 

 [68]
 

 .
 
 Lowenfield,
 
 484 U.S. at 244, 108 S.Ct. at 554 (quoting
 
 Zant v. Stephens,
 
 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)).
 

 [69]
 

 .
 
 Id.
 
 108 S.Ct. at 555.
 

 [70]
 

 . Fla.Stat.Ann. § 782.04(1).
 

 [71]
 

 .
 
 See Proffitt v. Florida,
 
 428 U.S. 242, 247-50, 96 S.Ct. 2960, 2964-65, 49 L.Ed.2d 913 (1976) (describing Florida sentencing procedure).
 

 [72]
 

 .
 
 Lowenfield,
 
 484 U.S. at 244, 108 S.Ct. at 554 (citing
 
 Zant v. Stephens,
 
 462 U.S. 862, 878, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235 (1983)).
 

 [73]
 

 . 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990).
 

 [74]
 

 .
 
 Id.
 
 110 S.Ct. at 1081.
 

 [75]
 

 .
 
 Id.
 
 at 1083.
 

 [76]
 

 .
 
 Zant v. Stephens,
 
 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).
 

 [77]
 

 .
 
 Lowenfield,
 
 484 U.S. at 246, 108 S.Ct. at 555.